Rick L. Koehmstedt
**SCHWARTZ, BON, WALKER & STUDER, LLC**
141 S. Center, Suite 500
Casper, WY  82601
Tel: (307) 235-6681
Fax: (307) 234-5099
E-mail: rick@schwartzbon.com

Thomas N. FitzGibbon (*Pro Hac Vice*)
Kimberly L. Thigpen (*Pro Hac Vice*)
**PFEIFFER THIGPEN FITZGIBBON & ZIONTZ LLP**
233 Wilshire Boulevard, Suite 220
Santa Monica, California 90401
Tel: (310) 451-5800
Fax: (310) 496-3175
E-mail: tnf@ptflaw.com
E-mail: klt@ptflaw.com

Attorneys for Defendants
*TIC Capital Markets, Inc.; Direct Capital Securities, Inc.*
*Clay Womack, Pacific Security Income Partners LP*
*and Pacific Security Group, Inc*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| RUSSELL C. FIELDGROVE; MARY JANE FIELDGROVE; et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>DENNIS R. LAWRENCE, et al.<br><br>          Defendants. | CASE NO.: 10-CV-0104 - D |

---

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TIC CAPITAL MARKETS, INC., PACIFIC SECURITY INCOME PARTNERS, LP, AND PACIFIC SECURITY GROUP, INC. TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION**

---

Defendants TIC Capital Markets, Inc., a Delaware corporation, Pacific Security Income Partners, LP, a Texas limited partnership, and Pacific Security Group Inc., a Texas corporation (inactive) (collectively the "**Moving Defendants**") submit this concise Memorandum of Law that explains the facts and legal authorities that support the granting of this Motion dismissing the First Amended Complaint (the "**Complaint**") against the Moving Defendants because this Court lacks personal jurisdiction over them.[1]

## I.   <u>INTRODUCTION</u>.

This is a case in which the Complaint of Plaintiffs  Russell C. Fieldgrove, Mary Jane Fieldgrove and Cecil H. Fieldgrove as Trustee of the Cecil H. Fieldgrove Trust (collectively "**Fieldgrove**" or "**Plaintiffs**") alleges that the Broker Defendants should have had a crystal ball to predict future improper activity by the issuer with respect to the use of the offering proceeds that allegedly resulted in an investment loss by Plaintiffs.  The investment was made during boom times in the oil and gas market and it appears with the benefit of hindsight that Striker Petroleum LLC, the offeror, was operating a Ponzi scheme with respect to at least some of its offerings. Because Striker does not appear to have the resources to reimburse Plaintiffs, they have sought to include a great many Defendants in their alleged web of liability in order to increase their likelihood of recovery.  As to the Moving Defendants here, that web cannot reach them as this Court lacks personal jurisdiction over them as they had no involvement with the offering—and none is alleged— and because (a) the application of the nationwide service of process rule regarding securities claims would offend the due process clause of the Fifth Amendment to the United States Constitution, and (b) it there are insufficient minimum contacts with Wyoming to adjudicate the state law claims on their own.

---

[1] The analysis used here is identical to that required for the adjudication of this same motion being made by the Moving Defendants in the *Gibbs v. Lawrence* case, Case No. 10-CV-0120-D and the *Miles v. Lawrence* case, Case No. 10-CV-00034, so the Moving Defendants are incorporating this brief by reference into those cases and requesting that the Court grant the Motion to Dismiss for Lack of Personal Jurisdiction in those actions as well.

II.     **FACTUAL BACKGROUND.**

    A.     **The Relevant Allegations of the Complaint.**

        1.     *The Involvement of Direct Capital Securities.*

The principal allegations of the Complaint are that Plaintiffs' broker, Mr. Lawrence, along with Mr. Pope, put the Plaintiffs' money into unsuitable and risky investments which later lost money.  As to DCS, it was alleged to be involved in the Striker Series B and Series B-2 Debenture Offerings which Plaintiffs purchased. (Compl. ¶¶ 80-81, 84)  Plaintiffs allege that by serving as the managing-broker dealer for the two Striker debenture offerings and conducting insufficient due diligence that DCS violated the federal securities laws, (Compl. ¶¶ 104-11, 116-17), Texas state securities law, (Compl. ¶¶ 123-31), committed common law fraud under Wyoming law, (Compl. ¶¶ 152-54), conspired with CapWest to commit fraud, (Compl. ¶¶ 160-64) and was negligent under Wyoming law. (Compl. ¶¶ 165-68)

        2.     *The Involvement of Moving Defendants.*

The Moving Defendants are not alleged to have taken any acts with respect to Plaintiffs or even the Striker offerings.  The only allegations against them are where they are incorporated, (Compl. ¶¶ 20, 21 & 23), that they are liable because they are alleged to be control persons under federal securities law with respect to Defendant DCS, (Compl. ¶¶ 121-22), and that they are indirectly liable under Texas state securities laws based on the actions of DCS. (Compl. ¶¶ 126-28) Plaintiffs also lump the Moving Defendants in with all other Defendants in the fraud claim, apparently based on some form of indirect liability. (Compl. ¶¶ 153-54) Thus, the sole basis for their inclusion in the Complaint is that they own, either directly or indirectly, shares in Defendant DCS, and have the authority to control DCS.  (Compl. ¶¶ 20, 21, & 23)

    B.     **The Moving Defendants Do Not Have Contacts with Wyoming.**

        1.     *Lack of Wyoming Contacts For TIC Capital Markets, Inc.*

TICCM is a Delaware corporation that is based in Austin, Texas.  It has Delaware corporate number 3633387 and was incorporated on March 7, 2003.  It has never been authorized to do business in Wyoming.  (Womack Decl. ¶ 3) TICCM has never conducted

business in Wyoming, as it is not authorized to business in Wyoming  and has not designated an agent for service of process in Wyoming. (Womack Decl. ¶ 4)  TICCM does not solicit business in Wyoming and has never done so.  TICCM does not own any real estate or property in Wyoming, and has no offices or employees in Wyoming. (Womack Decl. ¶ 5)

2.      *Lack of Wyoming Contacts For Pacific Security Income Partners LP*

PSIP is a limited partnership authorized under the laws of Texas that is based in Austin, Texas.  It has never been authorized to do business in Wyoming. (Womack Decl. ¶ 6) PSIP has never conducted business in Wyoming, as it is not authorized to business in Wyoming  and has not designated an agent for service of process in Wyoming. (Womack Decl. ¶ 7)  PSIP does not solicit business in Wyoming and has never done so.  PSIP does not own any real estate or property in Wyoming, and has no offices or employees in Wyoming. (Womack Decl. ¶ 8)

3.      *Lack of Wyoming Contacts For Pacific Security Group, Inc.*

PSG is a corporation authorized under the laws of Texas that is based in Austin, Texas.  It was incorporated on July 18, 1990.   It has never been authorized to do business in Wyoming. (Womack Decl. ¶ 9) PSG has never conducted business in Wyoming, as it is not authorized to business in Wyoming  and has not designated an agent for service of process in Wyoming. (Womack Decl. ¶ 10)  PSG does not solicit business in Wyoming and has never done so.  PSG does not own any real estate or property in Wyoming, and has no offices or employees in Wyoming. (Womack Decl. ¶ 11)

**C.      The Transactions Did Not Involve TICCM, PSIP or PSG.**

None of the three moving parties, TICCM, PSIP or PSG had any involvement with the Striker debenture transactions, including those alleged in the Gibbs or Fieldgrove First Amended Complaints or the Miles Complaint.  (Womack Decl. ¶ 12)  They did not prepare any of the offering materials in connection with the Striker debenture offerings, nor did they promote the offering. (Womack Decl. ¶ 12) None of these parties were compensated in any manner by Striker in connection with the Striker debenture transactions alleged in the Gibbs or Fieldgrove First Amended Complaint or in the Miles Complaint. (Womack Decl. ¶ 13)

III.   **LEGAL ARGUMENT**

A.   **There Is No Personal Jurisdiction Over the Moving Defendants With Respect to the Federal Securities Fraud Claim.**

1.   *The Applicable Legal Standards for Nationwide Service of Process Rules And the Limits of Due Process.*

Section 12(b)(2) of the Federal Rules of Civil Procedure provides that a party may assert by motion that the Court lacks personal jurisdiction over that party.  Fed. R. Civ. P. 12(b)(2).  The plaintiff bears the burden of establishing personal jurisdiction over the defendant or defendants. *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). In most situations, the personal jurisdiction of a federal court is commensurate with the jurisdiction available to a court of general jurisdiction in that state.  Fed. R. Civ. P.  4(k)(1)(A).  In securities cases, however, Congress has authorized nationwide service of process, and even worldwide service under the Exchange Act.  *See* 15 U.S.C. §§ 77aa & 78aa; *see Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); *Warfield v. Alaniz*, 569 F.3d 1015, 1028–1029(9th Cir. 2009).

Section 78aa provides, in pertinent part, as follows:

> The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. […]

15 U.S.C. § 78aa.  Even though there is nationwide service of process which is typically sufficient to confer personal jurisdiction, the due process clause of the Fifth

Amendment requires the plaintiff's choice of forum to be *fair and reasonable* to the defendant." *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1212 (10th Cir. 2000) (emphasis added).

The Tenth Circuit Court of Appeals has enumerated the proper process to determine whether a court has personal jurisdiction in a federal question case:

> Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.

*Peay*, 205 F.3d at 1209. The personal jurisdiction requirement flows from the Due Process Clause of the Fifth Amendment and restricts judicial power in order to protect the individual's liberty interest. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, *see also Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

In the *Peay* case the Tenth Circuit made it clear that every forum was not automatically acceptable using the "national contacts" test:

> Plaintiffs argue that because ERISA authorizes nationwide service of process, the district court can constitutionally exercise jurisdiction over defendants as long as they have minimum contacts with the United States as a whole. Under this approach, the so-called "national contacts" test, a plaintiff could sue a defendant in any federal court in the United States, regardless of the defendant's contacts with the forum or the burden on the defendant of litigating in that forum. We are convinced that due process requires something more.

*Id.* at 1211. The *Peay* court explained its due process argument as follows:

> The Supreme Court has not yet defined Fifth Amendment due process limits on personal jurisdiction. However, the Court has held that due process under the Fourteenth Amendment requires that "maintenance of [a] suit ... not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks and citation omitted). Due process limits on a court's ability to exercise jurisdiction "are designed to protect [defendants] by providing them with fair notice that their activities will

render them liable to suit in a particular forum." *Republic of Panama*, 119 F.3d at 945 (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 470-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). A defendant is deemed to have "fair warning" if it has "purposefully directed [its] activities at residents of the forum." *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174 (internal quotation marks and citation omitted). However, even if a defendant has "minimum contacts" with the forum, due process is not satisfied unless "the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* at 476, 105 S.Ct. 2174 (internal quotation marks and citation omitted).

Like the Eleventh Circuit, we discern no reason why the Fourteenth Amendment's fairness and reasonableness requirements "should be discarded completely when jurisdiction is asserted under a federal statute." *Republic of Panama*, 119 F.3d at 945. The Due Process Clauses of the Fourteenth and Fifth Amendments are virtually identical, fn5 and both "were designed to protect individual liberties from the same types of government infringement." *Id.* (*citing Mathews v. Eldridge*, 424 U.S. 319, 331-32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Accordingly, we hold that in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant. In other words, the Fifth Amendment "protects individual litigants against the burdens of litigation in an unduly inconvenient forum." *Id.*

*Peay*, 205 F.3d at 1211-12. Thus, the typical "minimum contacts" analysis can be used in this context. However, in this context the defendant has the burden to show that its liberty interests will be infringed and that the litigant will be at a severe disadvantage to his opponent. *Id. citing Burger King Corp.*, 471 U.S. at 478, 105 S.Ct. 2174.

In making this determination the court should consider the following factors: (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence

or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business. *Peay,* 205 F.3d at 1212; *see Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 201 (E.D. Pa. 1974).

Although it is rare that inconvenience rises to constitutional concern, when the defendant shows that the forum is unduly inconvenient, then "jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *Republic of Panama*, 119 F.3d at 948. To determine whether infringement on the defendant's liberty is justified sufficiently by government interests:

> courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy. Where ... Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.

*Peay,* 205 F.3d at 1213. As explained below, although it is often a high burden, the Moving Defendants can meet it here as they are not alleged to have done anything in connection with the offerings, and are simply being included as control persons, and there is no showing that requiring plaintiff to litigate in a forum fair to these Moving Defendants would interfere with congressional objectives. Given this lack of actual involvement, the five factors indicate that due process is not satisfied here.

      2.    *Allegations of Control Person Liability Are Insufficient In Themselves To Confer Personal Jurisdiction.*

There are not many cases assessing the personal jurisdiction aspect of control person liability under the securities laws using the due process analysis and they have split into two lines of authority. *Compare In re Baan Co. Securities Litigation*, 245 F.Supp. 2d 117, (D.D.C. 2003) and *San Mateo County Transit Dist. v. Dearman, Fitzgerald & Roberts*,

979 F.2d 1356 (9th Cir. 1992).  In *Baan* the court held that "that the broad understanding
of control person liability adopted by the Securities Act cannot on its own support
personal jurisdiction. This approach impermissibly conflates statutory liability with the
Constitution's command that the exercise of personal jurisdiction must be
fundamentally fair."  *In re Baan Co. Securities Litigation*, 245 F. Supp. 2d at 129.  *Baan*, like
most of those considering control person liability, was a case involving foreign nationals.

Although personal jurisdiction was upheld solely on the basis of control person
liability in *San Mateo County Transit Dist. v. Dearman, Fitzgerald & Roberts*, 979 F.2d 1356
(9th Cir. 1992), there was simply no analysis of any kind with respect to the due process
issues, and instead the Ninth Circuit considered whether substantive merit was a part of
the personal jurisdiction analysis, and it held no.  The *Baan* court said, even though it
was distinguishable because it one was a United States citizen and the other was a
foreign national, it disagreed with the reasoning of *San Mateo County Transit*, given the
constitutional concerns at issue and felt the Fifth Amendment was "made of sterner
stuff." 245 F. Supp. 2d at 129.

Other cases supporting the *Baan* approach include *Tracinda Corp. v. Daimlerchrysler
AG*, 197 F. Supp. 2d 86, 99 (D. Del. 2002) and *FDIC v. Milken*, 781 F.Supp. 226, 234
(S.D.N.Y.1991) (holding that the question of  control person liability was "not germane
to the issue of personal jurisdiction" and dismissing claims against foreign entities). In
*Tracinda* the court held "the Court declines to exercise jurisdiction over Defendant
Kopper based solely on Tracinda's controlling person claims." 197 F. Supp. 2d at 99.
Although Kopper was a foreign national, the concept is the same, that allegations of
control person liability—standing alone—are not automatically sufficient to confer
personal jurisdiction over any defendant.

In finding that an allegation of control personal liability was insufficient to create
personal jurisdiction, the court in *Baan* relied on the concept that imputing the
jurisdictional contacts of a controlled entity to the control person runs afoul of the
general rule that "a defendant corporation's contacts with a forum may not be attributed

to shareholders, affiliated corporations, or other parties." *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F. Supp. 2d 15, 22 (D.D.C.2000); *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925)(holding that the mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary).   It referenced the rule that courts "have long held that only in 'special circumstances' can jurisdiction be asserted over an out-of-forum parent corporation based on the forum contacts of its subsidiary." *Pathe Computer Control Systems Corp. v. Kinmont Indus., Inc.*, 955 F.2d 94, 96 (1st Cir. 1992).  Such special circumstances typically means allegations of "alter ego."  *See Baan*, 245 F. Supp. 2d at 131.

> 3.    *There Are Insufficient Contacts Between the Moving Defendants and the Forum To Satisfy Due Process.*

As indicated above, the allegation of control person liability, by itself, is insufficient to create personal jurisdiction over the Moving Defendants.  Likewise, in the Tenth Circuit, "national contacts" are not sufficient for personal jurisdiction, *Peay*, 205 F.3d at 1211, and the Court needs to determine whether due process is satisfied prior to confirming personal jurisdiction over the Moving Defendants and should consider the following five factors in its due process analysis: (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.  *Id.* at 1212.

In this case, the undisputed facts show that the Moving Defendants simply do not have the substantial, systematic, and continuous contacts with the State of Wyoming necessary to satisfy due process. The Declaration of Clay Womack shows that TIC Capital Markets, Inc., Pacific Security Income Partners, LP and Pacific Security Group, Inc. have never once availed themselves of the privilege of acting or conducting business in the State of Wyoming.  (Womack Decl. ¶¶ 4, 7, 10)  None of the Moving Defendants are incorporated in the State of Wyoming.  (Womack Decl. ¶¶ 4, 7, 10)  None of the Moving Defendants have ever had offices, places of business, telephone listings, or mailing addresses in Wyoming. (Womack Decl. ¶¶ 4, 7, 10). The defendants never sold products or provided services in Wyoming, never entered into contracts in Wyoming, never had registered agents or employees working in the State of Wyoming, never solicited business in the State of Wyoming, never maintained any real or personal property in the State of Wyoming, and never transacted business in the State of Wyoming.  (Womack Decl. ¶¶ 4, 7, 10)  In short, the Moving Defendants have never generally intended to avail themselves of the laws and protections of conducting business in the State of Wyoming.

As to the specific wrongdoing alleged in this case, the Moving Defendants were not involved and are not alleged to have been involved in any of the alleged transactions or alleged wrongdoings occurring in the State of Wyoming.  The only allegations against them are where they are incorporated, (Compl. ¶¶ 20, 21 & 23), that they are liable because they are alleged to be control persons under federal securities law with respect to Defendant Direct Capital Securities, Inc. (Compl. ¶¶ 121-22), and that they are indirectly liable under Texas state securities laws. (Compl. ¶¶ 126-28), and  They are also lumped in with all other Defendants in the fraud claim.  (Compl. ¶¶ 153-54) Indeed, the defendants have *no* contacts with Wyoming relating to the claims in this case.  Thus, factor one clearly favors the defendants.

Factor two, inconvenience, also favors the Moving Defendants.  The first prong, the interstate nature of the business favors the Defendants as they are alleged simply to be holding companies for DCS (either direct or indirect parent corporations or entities), and

not having taken any action on their own, including in Wyoming. There is also no showing or allegation that they independently take actions in various interstate locations. Prong two, access to counsel is neutral, as the Moving Defendants have counsel.  Prong three, the distance between their location and the forum suggests that it is an inconvenient forum, as there is a meaningful distance of 1,200 miles, and although air travel exists between the locations in Casper and Austin Texas, it is expensive—factors of which the Court can readily take judicial notice.  Even though today's technology and transportation advances make far away locations more accessible than in years past, it is still meaningfully inconvenient for these Moving Defendants which are based in Austin, Texas.  Weighing these, factor two overall also shows that litigation in this remote forum would be unfairly inconvenient and expensive.

Factor three judicial economy favors the defendants, as they are really only alleged to be vicariously liable, so little is gained by having them tried in the same location—as the claims against them are entirely derivative. Instead, Plaintiff can await the outcome of this action and then litigate with these Moving Defendants in an appropriate forum, or bring suit in that forum and stay it, pending the conclusion of this action.  Factor four, the location of discovery, does not favor Wyoming as the discovery as to these Moving Defendants would have to be in Texas anyway, given the nature of the claims against them and the lack of allegations that they took any independent acts in Wyoming.  Finally, factor five, "the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business" also favors the Moving Defendants as they are not regulated defendants at all, but simply owners of shares of regulated defendants, and in some cases indirectly.  The actions of these Moving Defendants also are not alleged to have extraterritorial effects, but only the actions of DCS are alleged to have affected Plaintiffs.

Thus, as parties that are not alleged to be directly liable, the Moving Defendants have shown that defending this action in Wyoming would be seriously and constitutionally inconvenient and result in a violation of due process.  These defendants

have not "purposefully directed" any actions toward Wyoming and have not invoked "the benefits and protections of the laws of the state."  Without question, the exercise of jurisdiction over these defendants by this Court based on these facts would offend "traditional notions of fair play." To hold otherwise given the utter absence of facts about their involvement, would mean that the "nationwide contacts" analysis would have to be used to uphold personal jurisdiction here.  If the limits on "nationwide contacts" does not apply here for purely derivative claims, when would it ever apply? Given that *Peay* held that the "nationwide contacts" rule is constitutionally insufficient, the Moving Defendants have shown that there are not enough contacts (in quantity or substance) to allow Plaintiffs to carry their burden of proof to show that personal jurisdiction exists over them here.

**B.      Pendent Personal Jurisdiction Only Applies if There Is Nationwide Federal Jurisdiction.**

Under the doctrine of pendent personal jurisdiction, a court can adjudicate pendent state law claims if it has personal jurisdiction over the federal claims but not independently over the state law claims. *United States v. Botefuhr*, 309 F.3d 1263, 1272-75 (10th Cir. 2002) *Action Embroidery Corp. v. Atlantic Embroidery Corp.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004). This inconsistency typically arises in the instance where a federal statute authorizes nationwide service of process.  To exercise such pendent personal jurisdiction, the state law claims must arise out of the same nucleus of operative fact. Further, the actual exercise of personal pendent jurisdiction in a particular case is within the discretion of the district court. In *Action Embroidery* the Ninth Circuit stated that the district court has discretion to dismiss the pendent claims where "considerations of judicial economy, convenience and fairness to litigants so dictate." *Action Embroidery*, 368 F.3d at 1181.

If the Court finds it has personal jurisdiction over the Moving Defendants with respect to the federal control person claims under Section 20(a), then it will have personal jurisdiction over these state law claims that allegedly arise out of the same nucleus of operative fact. As explained above and below, however, there is no personal jurisdiction

over either the federal or state law claims so there is no basis for pendent party personal jurisdiction.

    C.    **Because There Is No Pendent Federal Jurisdiction, The Court Lacks Personal Jurisdiction Over the State Law Claims.**

        *1.*    *The Applicable Legal Standards for Long Arm Jurisdiction In Wyoming.*

If the state law claims are considered on their own for purposes of personal jurisdiction, there is clearly insufficient contacts for this court to assert jurisdiction. Under Rule 4(e) of the Federal Rules of Civil Procedure, district courts have personal jurisdiction over non-resident defendants only to the extent authorized under the law of the forum state in which the district court sits. Thus, because this Court may only exercise personal jurisdiction over the non-resident defendants to the extent permitted by the law of the state in which it sits, Wyoming's long-arm statute is used to determine if this court has personal jurisdiction over the Moving Defendants in this case.

State "long-arm" statutes must comply with the minimum requirements of constitutional due process, and the "well-established minimum contacts analysis" applies to determine if defendants are subject to personal jurisdiction under Wyoming's long arm-statute. This analysis is based on the Fourteenth Amendment's incorporation of the Due Process Clause of the Fifth Amendment. The *International Shoe* "minimum contacts" standard may be met in either of two ways. Specific jurisdiction, based on a matter occurring in the forum state, exists when the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228 (1958). General jurisdiction lies when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state. In either case, the court must see to it that the exercise of jurisdiction " 'does not offend traditional notions of fair play and substantial justice.' " *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154);

*Afflerbach v. Cunard Line, Ltd.*, 14 F. Supp. 2d 1260, 1264 (10th Cir. 1998) (citing *Dobbs v. Cheveron U.S.A., Inc., 39 F.3d 1064, 1067 (10th Cir.* 1994)).

In *Chamberlain v. Ruby Drilling Co., Inc.*, the Wyoming Supreme Court stated the following:

> The exercise of personal jurisdiction over a defendant is statutorily authorized on any basis consistent with the Wyoming and United States Constitutions. Wyo. Stat. § 5-1-107(a) (1997). Due process requires that the defendant have " 'minimum contacts' " with the forum state such that the exercise of jurisdiction does not offend " 'traditional notions of fair play and substantial justice.' " *Amoco Production Co.*, 886 P.2d at 267 (*quoting International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

*Chamberlain v. Ruby Drilling Co., Inc.*, 986 P.2d 846 (Wyo. 1999).

The Tenth Circuit has also discussed application of Wyoming's long arm statute:

> The Wyoming statute incorporates the minimum contacts standards adopted in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and extends Wyoming court's jurisdiction to the limits of the due process clause. *First Wyoming Bank N.A., Rawlins v. Trans Mountain Sales and Leasing, Inc.,* 602 P.2d 1219, 1221 (Wyo. 1979).

> The Wyoming Supreme Court has construed the Wyoming long arm statute in light of *International Shoe,* and stated that the plaintiff must establish the existence of three criteria in order to demonstrate a basis for jurisdiction over a non-resident defendant:

>> (1) The defendant purposefully availed itself of the privilege of acting within the forum state or of causing important consequences there:

>> (2) The cause of action arises from the consequences in the forum state of the defendant's activities; and

>> (3) The activities of the defendant or the consequences of those activities have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Markby v. St. Anthony Hospital Systems, 647 P.2d 1068, 1073 (Wyo. 1982).* "[I]f the cause of action did not arise from the activities of the defendants in Wyoming, they are not amenable to service under the [Wyoming] long arm statue." *Cozzens v. Piper Aircraft Corp.,* 514 P.2d 1375, 1379 (Wyo. 1973).

*Ten Mile Industrial Park v. Western Plains Service Corp.,* 810 F.2d 1518, 1525 (10th Cir. 1987).

As explained above, the fact that a party owns, directly or indirectly, shares in another defendant has never been enough to show sufficient contacts for the exercise of general personal jurisdiction. *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F. Supp. 2d 15, 22 (D.D.C.2000). Likewise, the ownership of stock by a parent corporation does not create personal jurisdiction based on the acts of the subsidiary, whether direct or indirect. *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925).

> 2.    *There Are Insufficient Contacts Between the Moving Defendants and the Forum To Satisfy Due Process.*

As explained in detail above, the Moving Defendants have no contacts with Wyoming so there is no basis for asserting general jurisdiction over them as to any of the state law claims.  There are no allegations that they were actually involved in any of the transactions at issue, so specific jurisdiction will not lie.  There are no factual allegations of any kind against the Moving Defendants except that they are control persons with respect to DCS.  (Compl. ¶¶ 20, 21, & 23) The substantive state claims that are alleged against them: (1) fraud (Claim Seven) lacks any allegations at all except boilerplate, (Compl. ¶¶ 152-54), and  (2) the Texas securities claims (Claim Three) lack any facts as to the Moving Defendants' involvement except again as control persons.  (Compl. ¶¶ 126-28)  Thus, the absence of factual allegations showing conduct by the Moving Defendants directed to the forum means there is no personal jurisdiction for the state law claims.

## IV.    **CONCLUSION.**

For these reasons, due process does not allow this Court to exercise personal jurisdiction over TIC Capital Markets, Inc., Pacific Security Income Partners, LP and Pacific Security Group, Inc. with regards to this action (as well as the *Gibbs* and *Miles* actions), whether under federal or state law. Therefore, these Defendants move and respectfully request that this Court to dismiss the Plaintiffs' First Amended Complaint for lack of personal jurisdiction.

DATED this 27th day of August, 2010.

Rick L. Koehmstedt
**SCHWARTZ, BON, WALKER & STUDER, LLC**


_/s/ Rick L. Koehmstedt_
Rick L. Koehmstedt

Thomas N. FitzGibbon
**PFEIFFER THIGPEN FITZGIBBON & ZIONTZ LLP**


Thomas N. FitzGibbon

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document entitled **MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TIC CAPITAL MARKETS, INC., PACIFIC SECURITY INCOME PARTNERS, LP, AND PACIFIC SECURITY GROUP, INC. TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION** has been e-filed and thereby served electronically via the Court's CM/ECF system in accordance with Federal Rule of Civil Procedure 5(b) on August 27, 2010.

_____
Thomas N. FitzGibbon