Kim D. Cannon, Wyoming State Bar #5-1401
J. Mark Stewart, Wyoming State Bar #6-4121
Davis & Cannon, LLP
422 West 26th Street
P.O. Box 43
Cheyenne, WY 82003
Phone:  307/634-3210
Facsimile:  307/778-7118
cannon@davisandcannon.com
mark@davisandcannonchey.com

John A Hutchings (*pro hac vice*)
Dill Dill Carr Stonbraker & Hutchings, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:          (303)777-3737
Facsimile:      (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| RUSSELL C. FIELDGROVE, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.10CV0104-D |
| | ) | |
| DENNIS R. LAWRENCE, et al | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS OF
DENNIS R. LAWRENCE**

Plaintiffs' Amended Complaint (Doc. 30)[1] alleges in detail the role of Dennis R. Lawrence ("Lawrence") in the sale of fraudulent Ponzi scheme investments to the Plaintiffs which ultimately proved to be worthless.  The Plaintiffs are Russell C. Fieldgrove and Mary Jane Fieldgrove (the "Fieldgroves") and the Cecil H. Fieldgrove Trust, Cecil H. Fieldgrove, Trustee (the "Fieldgrove Trust").  (The Fieldgroves and the Fieldgrove Trust are collectively referred to herein as the "Plaintiffs".)   The Plaintiffs' claims involve investments in two of the same fraudulent schemes in which the Plaintiffs invested in the related case of *Naomi L. Miles Revocable Trust, Naomi L. Miles, Trustee, et al v. Dennis R. Lawrence, et al*, Case No. 10-CV-0034 (the "*Miles* case") pending in this Court.  Also related to this case and the *Miles* case, is the case of the *Martha W. Gibbs Revocable Trust, Susan Gibbs, Scott M. Gibbs, and James W. Gibbs, Trustees, et al v. Dennis  R. Lawrence, et al*, Case No. 10-CV-012004 (the "*Gibbs* case") also pending in this Court.  On August 19, 2010, this Court entered its Order consolidating cases for purposes of discovery pursuant to which this case, the *Miles* case, and the *Gibbs* case were consolidated (Doc. 35, *Gibbs* Doc. 43, *Miles* Doc. 107).  As pertains to this motion of Lawrence, as well as Rule 12(b) motions of other Defendants, the Court has advised that the parties may adopt and incorporate by reference motions or portions thereof filed in one or more of the related cases into one or more of the other related cases.  (Doc. 28, *Gibbs* Doc. 37, *Miles* Doc. 104).

The Fieldgroves bring four claims for relief against Lawrence consisting of:  (1) First Claim for Relief for violation of 15 U.S.C. § 78j(b) ("Section 10(b)") and 17 C.F.R. § 240.10b-5 ("Rule 10b-5"); (2) Fifth Claim for Relief for professional negligence; (3) Seventh Claim for

---

[1] Thus otherwise referred to "Doc." refers to documents filed in the above-captioned case.

Relief for common law fraud; and (4) Ninth Claim for Relief for negligence.

The Fieldgrove Trust brings three claims for relief against Lawrence consisting of: (1) First Claim for Relief for violation of Section 10(b) and Rule 10b-5; (2) Seventh Claim for Relief for common law fraud; and (3) Ninth Claim for Relief for negligence.

The Fieldgroves allege that between October of 2006 and April of 2007, Lawrence provided professional accounting services to them, provided investment advice, and investments recommendations, and offered and sold securities to them (Amended Complaint, ¶ 12). With advice and assistance from Lawrence, the Fieldgroves and the Fieldgrove Trust, sold a ranch which they jointly owned in 2006 (Amended Complaint, ¶ 13). The Fieldgroves consulted with Lawrence regarding conducting what is known as a "Section 1031 exchange." Lawrence advised against a "Section 1031 exchange" and thus the Fieldgroves were left with approximately $450,000, after payment of taxes and expenses of sale, from their share of the proceeds from the sale of the ranch (Amended Complaint, ¶ 3). In November and December of 2006, the Fieldgroves, and Cecil H. Fieldgrove, as Trustee of the Fieldgrove Trust, had one or more meetings at Lawrences' office with Lawrence, and meetings at Lawrence's office with Lawrence and Pope (Amended Complaint, ¶¶ 50, 51 and 52). During these meetings, Lawrence made untrue statements of material fact concerning the Striker Series B Debentures to the Plaintiffs (Amended Complaint, ¶¶ 52 and 53), made untrue statements of material fact to the Plaintiffs regarding the purchase of promissory notes of Medical Capital Holdings, Inc. ("Med Cap") in one of its offering entities known as Medical Provider Funding IV ("MP IV Notes") (Amended Complaint, ¶ 56), omitted to disclose material facts regarding the MP IV Notes to the Plaintiffs (Amended Complaint, ¶ 57), and omitted to disclose material facts to the Plaintiffs regarding the

Striker Series B Debentures (Amended Complaint, ¶ 58).  During a December 15, 2006 meeting at Lawrence's office, Lawrence and Pope provided to the Plaintiffs private placement memoranda for the Striker Series B Debenture offering and the offering of MP IV Notes (Amended Complaint, ¶ 60).  The private placement memorandum for the Striker Series B Debentures contained untrue statements of material fact (Amended Complaint, ¶ 61) and omitted to disclose material facts (Amended Complaint, ¶ 62).  The private placement memorandum for the MP IV Notes contained untrue statements of material fact (Amended Complaint, ¶ 63) and omitted to disclose material facts (Amended Complaint, ¶ 64).

After listening to the statements of Lawrence, and reviewing the private placement memoranda provided to them, the Fieldgroves, based upon Lawrence's statements and the private placement memoranda, determined they wanted to purchase Striker Series B Debentures and MP IV Notes (Amended Complaint, ¶ 65).  The Fieldgroves sought the advice and assistance of Lawrence to complete the necessary documentation so as to permit such purchases (Amended Complaint, ¶ 65).  The Fieldgroves were not accredited investors (Amended Complaint, ¶ 46). Pursuant to the purported terms of the offering of the Series B Debentures and MP IV Notes, a purchaser was required to be an "accredited investor."  Lawrence completed the necessary forms and agreements, consisting of the Confidential Account Application, Subscription Agreement for the Series B Debentures, CapWest Direct Participation Program/REIT Suitable and Order Transmittal Forms, and Subscription Agreement for the MP IV Notes, falsely representing the assets, the new worth, the investment knowledge, and the investment experience of the Fieldgroves (Amended Complaint, ¶¶ 66-70).  The result was that virtually all of the assets of the Fieldgroves were invested in two fraudulent Ponzi schemes wholly unsuitable for the

Fieldgroves (Amended Complaint, ¶¶ 71-73).

The Fieldgrove Trust, as a result of the meetings with Lawrence, and the private placement memoranda of the Striker Series B Debentures and MP IV Notes provided to the Fieldgrove Trust by Lawrence, also purchased Striker Series B Debentures and MP IV Notes (Amended Complaint, ¶¶ 74-76). The Fieldgroves purchased $300,000 of Series B Debentures on December 21, 2006 and $150,000 of MP IV Notes on December 21, 2006, for a total purchase price of $450,000, representing virtually all of the Fieldgroves' assets (Amended Complaint, ¶¶ 46, 71). Also on December 21, 2006, the Fieldgrove Trust purchased $400,000 of Series B Debentures and $200,000 of MP IV Notes (Amended Complaint, ¶ 47). Subsequently, on June 22, 2007, the Fieldgrove Trust purchased $90,000 of Striker Series B-2 Debentures based upon a private placement memorandum provided to it by Pope. The Fieldgrove Trust does not bring claims against Lawrence based upon its $90,000 purchase of Series B-2 Debentures.

The Amended Complaint contains numerous allegations of acts and conduct of Lawrence which support the claims made against him by the Plaintiffs (Amended Complaint, ¶¶ 3, 4, 12, 46, 48-53, 55-75, 108-117, 142-146, 153, 154, and 166-168). The Amended Complaint also alleges the details of the two fraudulent Ponzi schemes in which Lawrence offered and sold investments to the Plaintiffs (Amended Complaint, ¶¶ 28-43). The detail with which Plaintiffs allege Lawrence's involvement in the sale of the fraudulent investments to the Plaintiffs satisfies the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b) providing Lawrence with fair notice of the Plaintiffs' claims under Section 10(b) and Rule 10b-5 (First Claim for Relief). *Southland Securities Corp. v. InSpire Insurance Solutions*, 365 F.3d 353, 362 (5th Cir. 2000). The Plaintiffs have also

adequately state their other claims against Lawrence for professional negligence (Fieldgroves only, Fifth Claim for Relief), common law fraud (Seventh Claim for Relief), and negligence (Ninth Claim for Relief). Lawrence's Motion to Dismiss the Plaintiffs' Amended Complaint for purported pleading deficiencies should be denied.

## THE COURT REVIEWS A RULE 12(b)(6) MOTION UNDER THE "PLAUSIBILITY" STANDARD

In the related cases, Plaintiffs, and many of the Defendants, have cited to the Court the applicable cases and argued the application of the "plausibility" standard established by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 50 U.S. 544, 555, 127 S.Ct. 1955, 1974 (2007) and as further construed by the Tenth Circuit in *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Circ. 2008) and *Phillips v. Bell*, 2010 W.L. 517629 (10th Cir. 2010). Rather than again restating the standard, Plaintiffs adopt and incorporate herein by reference as if set forth in its entirety, Plaintiffs' Statement of the Rule 12(b)(6) Plausibility Standard as set forth in its responses to the Motion for Judgment on the Pleadings of Defendant Richard Hancock and the Motion to Dismiss of Steve Holmes filed in this case.

## THE PLAINTIFFS ALLEGE A STRONG INFERENCE OF SCIENTER AND ADEQUATELYL STATE A CLAIM UNDER SECTION 10(b)

Lawrence argues that the Plaintiffs have not adequately alleged scienter under the PLSRA which requires that the Amended Complaint state with particularity facts giving rise to a strong inference that Lawrence acted with the required state of mind. 15 U.S.C. § 78u-4(b)(2). Lawrence asks this Court to interpret the pleading requirement much narrower than the law requires. Scienter has been defined by the United States Supreme Court to mean a mental state embracing an intent to deceive, manipulate or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S.

185, 96 S. Ct. 1375, 47 L. Ed. 2d 688, n. 12 (1976).  The United States Supreme Court in *Ernst & Ernst* did not determine whether recklessness may be sufficient for establishing scienter.  *Id.* The Tenth Circuit recognizes recklessness satisfies the scienter requirement for violation of Section 10(b) and Rule 10b-5.  *Hackbart v. Holmes*, 685 F.2d 114, 117 (10th Cir. 1982). Recklessness is defined as conduct that is an extreme departure from the standards of ordinary care and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.  *Anixter v. Home-Stake Production Company*, 77 F.3d 1215, 1232 (10th Cir. 1996).  In *City of Philadelphia v. Fleming Companies, Inc.* 264 F. 3d 1245 (10th Cir. 2001), the Tenth Circuit reaffirmed the recklessness standard as sufficient to establish scienter and specified the requirements for pleading recklessness under the PSLRA.  Under the standard established by the PSLRA, a plaintiff must plead facts raising a strong inference of intentional conduct or reckless conduct that is an extreme departure from the standards of ordinary care which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it.  *Id.* at 1259-60.

In *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007), the United States Supreme Court clarified the standard by which Courts should determine whether a plaintiff has adequately plead the inference of scienter.  Initially, the Court noted that to qualify as "strong" the inference of scienter must be more than merely plausible or reasonable, but must be cogent and at least as compelling as any opposing inference of non-fraudulent conduct.  *Id.*  551 U.S. at 314, 127 S. Ct. at 2504-05.  *Webster's Third New International Dictionary*, 1158 (1986) defines "inference" as "the act of passing from one or

more propositions . . . considered as true to another the truth of which is believed to follow from

the former". The Court in *Tellabs* established three guidelines to be followed where a District

Court is faced with a Rule 12(b)(6) motion to dismiss a Section 10(b) claim for failure to

adequately plead scienter. The first is that the Courts must, as with any motion to dismiss for

failure to plead a claim on which relief can be granted, accept all factual allegations in the

complaint as true. *Tellabs*, 551 U.S. at 322, 127 S. Ct. at 2509. Secondly, the District Court

must consider the complaint in its entirety as well as other sources ordinarily examined when

ruling on 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint

by reference and matters of which the Court may take judicial notice. The inquiry is then

whether all facts alleged, <u>taken collectively</u>, give rise to a strong inference of scienter, not

whether any individual allegation, scrutinized in isolation, meets this standard. *Id.*, 551 U.S. at

322-23, 127 S. Ct. at 2509. Finally, in determining whether the pleaded facts give rise to a

"strong" inference of scienter, the Court must take into account plausible opposing inferences.

*Id.*, 551 U.S. at 323, 127 S. Ct. at 2509-10. The *Tellabs* Court also provided additional guidance.

The strength of the inference cannot be decided in a vacuum. The inquiry is inherently

comparative. To determine whether a plaintiff has alleged facts that give rise to the required

strong inference of scienter, the Court must consider plausible non-culpable explanations for the

defendant's conduct, as well as inferences favoring the plaintiff. The inference that the

defendant acting with scienter need not be irrefutable or a smoking gun or even the most

plausible of competing inferences. *Id.*, 551 U.S. at 323-24, 127 S. Ct. at 2510. A complaint will

survive if a reasonable person would deem the inference of scienter cogent and at least as

compelling as any opposing inference one could draw from the facts alleged. *Id.*, 551 U.S. at

324, 127 S. Ct. at 2510.  In sum, when the <u>allegations are accepted as true</u> and <u>taken collectively</u>, would a reasonable person deem the inference of scienter at least as strong as any opposing inference.  *Id.*, 551 U.S. at 326, 127 S. Ct. at 2511.  Subsequent to *Tellabs*, the Second Circuit in *ECA v. JP Morgan Chase Company*, 553 F.3 187, 199 (2nd Cir. 2009) recognized at least four circumstances which may give rise to a strong inference of the requisite scienter.  These circumstances are where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud, (2) engaged in deliberate illegal behavior, (3) knew facts and had access to information suggesting that their public statements were not accurate, and (4) failed to check information they had a duty to monitor.

The Plaintiffs' numerous factual allegations of the conduct of Lawrence create a strong inference that he, at a minimum, acted with recklessness, if not with actual intent to deceive, manipulate, and defraud.  The Fieldgroves allege it is Lawrence who falsely completed the documents necessary to effectuate the purchase of Series B Debentures so as to falsely represent them as "accredited investors" (Amended Complaint, ¶¶ 65-70).[2]  This deliberate fraudulent contrivance is well beyond mere recklessness and is a fact creating a strong inference of a mental state embracing an intent to deceive, manipulate, and defraud.  Lawrence recommended and advised the Plaintiffs purchase an aggregate of $700,000 of Series B Debentures and an aggregate of $350,000 of MP IV Notes, and directly participated in the sale of such securities to the Plaintiffs.  The Plaintiffs specifically allege how and by what means Lawrence did so, alleging the specific dates of meetings (Amended Complaint, ¶¶ 50, 51 and 52), the participants

---

[2] Pursuant to 17 C.F.R. § 230. 501(a) an "accredited investor" is an individual or entity meeting certain minimum financial requirements.

at meetings (Amended Complaint, ¶¶ 50-52), and the location of meetings(Amended Complaint,

¶¶ 50-52).  The Plaintiffs allege specific statements by Lawrence (Amended Complaint, ¶ 52),

and why such statements were false (Amended Complaint, ¶ 53).  Plaintiffs allege Lawrence

failed to perform an adequate due diligence investigation before recommending, advising and

offering to the Plaintiffs the Striker Series B Debentures and, as a result, omitted to disclose

numerous material facts, including the existence of a fraudulent Ponzi scheme (Amended

Complaint, ¶ 55).  Plaintiffs allege specific untrue statements of material fact by Lawrence with

respect to the MP IV Notes (Amended Complaint, ¶ 56).  Plaintiffs allege that Lawrence failed to

perform an adequate due diligence investigation with regard to the MP IV Notes and, as a result,

omitted to disclose material facts (Amended Complaint, ¶ 57), and that Lawrence omitted to

disclose material facts to the Plaintiffs of both the Striker Series B Debentures (Amended

Complaint, ¶ 58) and the MP IV Notes (Amended Complaint, ¶ 59).  Plaintiffs allege that

Lawrence provided to them private placement memoranda and other offering documents

(Amended Complaint, ¶ 60), and that the private placement memoranda contained untrue

statements of material fact (Amended Complaint, ¶¶ 61, 63), and omitted to disclose material

facts (Amended Complaint, ¶ 62, 64).  Failure to disclose the risks of the lack of audited

financial statements (Amended Complaint, ¶¶ 58(b), 59(b)) is particularly glaring, creating a

strong inference of conduct meeting the recklessness standard, in view of Lawrence's position as

an accountant, a person who would understand and appreciate the significance of audited

financial statements and the significance of the lack of audited financial statements in securities

offerings of the type and nature of those sold to the Plaintiffs.  In recommending, advising,

offering and selling to the Plaintiffs, and as an accountant for the Fieldgroves, Lawrence owed to

them a duty to have checked the accuracy of the information which he provided.

Plaintiffs allege Lawrence failed to conduct an adequate due diligence investigation of Striker and Med Cap, and their offerings prior to offering their securities to the Plaintiffs (Amended Complaint, ¶¶ 55 and 57) and as a result omitted to disclose material facts (Amended Complaint, ¶¶ 58 and 59).  An underwriter's position when offering securities is similar to that of Lawrence's position in offering and selling the securities to the Plaintiffs.  Underwriters must exercise a high degree of care of investigation and independent verification of a company's representations.  *Feit v. Leasco Data Processing Equipment Corp.*, 332 F.Supp. 544, 582 (E.D.N.Y. 1971).  An underwriter may not blindly rely on information provided to it and where "red flags" arise, must particularly investigate such warnings.  *In re WorldCom Securities Litigation*, 346 F.Supp.2d 628, 672 (S.D.N.Y. 2004).  Courts insist that underwriters conduct meaningful investigations which has been deemed to include reasonable investigation of unaudited financial information.  *Glassman v. ComputerVision Corp.*, 90 F.3d 617, 629 (1st Cir. 1996).  A broker-dealer's due diligence investigation which was found cursory and thus insufficient has been held to satisfy the scienter recklessness standard.  *Everest Securities, Inc. v. Securities and Exchange Commission*, 116 F.3d 1235, 1239 (8th Cir. 1997); *Kaplin v. Rose*, 49 F.3d 1363, 1380 (9th Cir. 1994) cert. denied 116 S.Ct. 58 (1995).

When all of the allegations of the Amended Complaint are accepted as true, and <u>taken collectively</u>, a reasonable person would deem the inference of scienter at least as strong as any opposing inference.  Lawrence has not offered any opposing inference for his conduct as alleged in the Amended Complaint.  Further, Lawrence engaged in deliberate illegal behavior by falsifying the Fieldgroves' documents effectuating their purchase of the Series B Debentures and

11

Med IV Notes.   Lawrence also failed to check information he had a duty to check in recommending, offering, and selling investments to the Plaintiffs.   Plaintiffs have thus adequately alleged a strong inference of scienter as required under the PSLRA and thus state a claim for relief under Section 10(b) against Lawrence.

## THE FIELDGROVES HAVE ADEQUATELY ALLEGED A CLAIM OF PROFESSIONAL NEGLIGENCE AGAINST LAWRENCE

Lawrence asserts that the Fieldgroves' claim of professional negligence against him is barred by the Statute of limitations provisions of W.S. § 1-3-107.   Lawrence bases his assertion that the Fieldgroves' claims are not within the Statute of limitations of W.S. § 17-1-3-107, asserting that there is no allegation that the Fieldgroves either did not discover or could not have reasonably discovered the alleged act, error or omission within the Statute's two year provision. The Fieldgroves' professional negligence claim incorporates into it paragraphs 1 through 140 of the Amended Complaint.   This incorporation by reference is proper.   (F.R.Civ.P. 10(c)).   The Amended Complaint alleges the following:

1.     The Striker Litigation Complaint was not filed until on or about December 3, 2009 (Amended Complaint, ¶ 35).

2.     The Med Cap Litigation was not filed until or about July 16, 2009 (Amended Complaint, ¶ 38).

3.     The Fieldgroves could not have discovered the untruths or omissions concerning their investment in Series B Debentures until January of 2009 when payments ceased (Amended Complaint, ¶¶ 129, 138).   The Fieldgroves have further alleged they did not discover the untruths or omissions concerning their investment in Series B Debentures until December 3, 2009 when

the Striker Litigation was filed.  Both of these dates are within the two year period for discovery of the alleged acts and omissions giving rise to the claims.

4.      Although Plaintiffs do not specifically allege an actual date of discovery or when they could possible have discovered the untruths or omissions concerning their investment in the MP IV Notes, Plaintiffs have alleged that the Securities and Exchange Commission did not file its Complaint in the Med Cap Litigation until January 16, 2009, which is a date within the two year period for discovery of the alleged acts, errors and omissions giving rise to the claim of W.S. § 1-3-107 (Amended Complaint, ¶ 38).

Construing limitation periods under federal securities laws, Courts have held that a plaintiff is on inquiry notice which is characterized as sufficient storm warnings to alert a reasonable person of the possibility that there were misleading statements or significant omissions involved in the sale.  *Anixter v. Home-Stake Production Company*, 939 F.2d 1240, 1437 (10th Cir. 1991).  In *Anixter*, the Court found that the filing of an SEC Complaint regarding the alleged fraudulent conduct together with a subsequent rescission offer and a Wall Street Journal article were sufficient to put a plaintiff on notice that something was amiss.  *Id*. at 1438. The Fieldgroves have affirmatively plead the dates upon which the SEC filed actions related to its investment in the Striker Series B Debentures and the MP IV Notes.  This action was brought within two years of the filing of such actions as the initial Complaint in this case was filed on June 2, 2010.  Further, as referenced above, the Fieldgroves have alleged the actual date of discovery as being the same date as the SEC filed its action related to the Series B Debentures, and has alleged the date of the filing by the SEC of the Med Cap Litigation.  The Fieldgroves

have also alleged that they could not have reasonably discovered any act or omission related to the Series B Debentures until January of 2009, when payments stopped.

The Fieldgroves have made allegations supporting their professional negligence was brought within the applicable statute of limitations, W.S. § 1-3-107.  However, the statute of limitations is an affirmative defense and it is Lawrence's burden to bring forth facts that the Fieldgroves have not timely brought their professional negligence claim against him.  Lawrence has failed to bring forth any facts in support of his argument that W.S. § 1-3-107 should be applied by this Court to bar the Fieldgroves' professional negligence claim.  Therefore, the Motion to Dismiss the Fieldgroves' professional negligence claim should be denied.

## THE PLAINTIFFS ADEQUATELY PLEAD COMMON LAW FRAUD AGAINST LAWRENCE

The Plaintiffs agree F.R.Civ.P. 9(b) is applicable to their fraud claim (Seventh Claim for Relief) against Lawrence and that *Birt v. Wells Fargo Home Mortgage, Inc.*, 75 P.3d 640 (Wyo. 2003) sets forth the elements of a fraud claim in the State of Wyoming.  The Plaintiffs'' common law fraud claim against Lawrence satisfies both the requirements of F.R.Civ.P. 9(b) and Wyoming law by alleging with particularity the requisite elements for fraud under Wyoming law.

The Plaintiffs' common law fraud claim incorporates within it paragraphs 1 through 151 of the Amended Complaint.  Contrary to Lawrence's assertions, the Amended Complaint sets forth the circumstances constituting the fraud with particularity, F.R.Civ.P. 9(b), by alleging the time, place, and contents of the false representations, the identity of the party making the false statements, and the consequences thereof (see Amended Complaint, ¶¶ 3, 4, 12, 46-53, 55-75, 108-117 and 142-146).  The requirements for pleading the circumstances constituting securities

fraud under Section 10(b) are at least, if not more, stringent than those of F.R.Civ.P. 9(b).  See

15 U.S.C. § 78u-4(b)(1) and compare to F.R.Civ.P. 9(b).  The most significant difference

between the pleading requirements of the PSLRA and Rule 9(b) is that under Rule 9(b) malice,

intent, knowledge, and other conditions of the mind of a person may be asserted generally while

15 U.S.C. § 78u-4(b)(2) requires the pleading of facts creating a strong inference of a state of

mind.

   In addition to pleading circumstances constituting Lawrence's fraud including the time,

place, and contents of false representations, the identity of the parties making the false

statements, and other circumstances of Lawrence's fraudulent conduct, the Plaintiffs have plead

they purchased the investments based upon Lawrence's conduct, thus believing Lawrence's

misrepresentations to be true, relied upon the false representations (Amended Complaint, ¶ 153),

and suffered damages (Amended Complaint, ¶ 154).  The Plaintiffs therefore state a claim for

relief for common law fraud against Lawrence.

<u>**THE PLAINTIFFS STATE A CLAIM FOR RELIEF OF NEGLIGENCE**</u>
<u>**AGAINST LAWRENCE**</u>

   The Plaintiffs' Ninth Claim for Relief is for negligence against Lawrence.  The elements

of a claim of negligence under Wyoming law are substantially similar to a claim of professional

negligence under Wyoming law.  Compare *Rino v. Mead*, 55 P.3d 13, 20 (Wyo. 2002) with *Birt*

*v. Wells Fargo Home Mortgage, Inc.*, 75 P.3d at 658.

   The Plaintiffs' Ninth Claim for Relief incorporates within it paragraphs 1 through 164 of

the Amended Complaint.  Thus, the allegations of duty and breach contained in the Fieldgroves'

professional negligence claim against Lawrence (Fifth Claim for Relief) are directly incorporated

into the negligence claim (Ninth Claim for Relief).  Similarly, allegations of proximately caused

injury and damages are both incorporated from the professional negligence claim into the negligence claim as well as separately alleged (Amended Complaint, ¶ 168).   Thus, the Plaintiffs' Ninth Claim for Relief adequately states a claim for negligence against Lawrence under Wyoming law.

## **CONCLUSIONS**

The totality of the allegations contained in the Amended Complaint more than gives Lawrence fair notice of the claims which are asserted against him.   The allegations against Lawrence are particular and detailed.   The requisite elements of all claims are contained within the Amended Complaint.   The Plaintiffs therefore respectfully request that Lawrence's Motion to Dismiss be denied.

Respectfully submitted this 20th day of September, 2010.

DAVIS & CANNON, LLP

By:` *s/*_____
J. Mark Stewart
422 West 26th Street
P.O. Box 43
Cheyenne, WY 82003
Telephone:      (307) 634-3210
Facsimile:      (307) 778-7118
mark@davisandcannonchey.com

Kim D. Cannon
DAVIS & CANNON, LLP
40 South Main
P.O. Box 728
Sheridan, WY 82801
Telephone:      (307) 672-7491
Facsimile:      (307) 672-8955
cannon@davisandcannon.com

John A Hutchings (*pro hac vice*)
DILL DILL CARR STONBRAKER
   & HUTCHINGS, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:         (303)777-3737
Facsimile:     (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing on the 20th day of September, 2010 to the following:

Jeffrey C. Brinkerhoff
Mark W. Gifford
Gifford & Brinkerhoff
jeff@giffordbrinkerhoff.com
mark@giffordbrinkerhoff.com

K Lawson Pedigo
Miller Keffer Bullock & Pedigo
KLPedigo@mkp-law.net

David A. Baugh
Baugh Dalton Carlson & Ryan, LLC
dbaugh@baughdaltonlaw.com

Charles W. Gameros, Jr.
Hoge & Gameros
bgameros@legaltexas.com

Thomas N. Long
Laura Jean Jackson
Long Reimer Winegard
tlong@lrw-law.com
ljackson@lrw-law.com

David F. DeFazio
DeFazio Law Office
david@defaziolaw.com

Jason Tangeman
Anthony Nicholas Goodrich & Tangeman
jtangeman@wyolegal.com

Rick L. Koehmstedt
Schwartz, Bon, Walker & Struder, LLC
rick@schwartzbon.com

Michael T. McConnell
Jared C. Lockwood
McConnell Fleischner Houghtaling &
Craigmile, LLC
mmcconnell@mfhc.com
jlockwood@mfhc.com

Thomas N. Fitzgibbon
Kimberly L. Thigpen
Pfeiffer Thigpen FitzGibbon & Ziontz LLP
tnf@ptflaw.com
klt@ptflaw.com

**and sent either electronically or by mail to:**
Nathan Glossi
605 E. Myrtle Street
Fort Collins, CO 80524
Email: nglossi@hotmail.com

_s/_ _____