Kim D. Cannon, Wyoming State Bar #5-1401
J. Mark Stewart, Wyoming State Bar #6-4121
Davis & Cannon, LLP
422 West 26th Street
P.O. Box 43
Cheyenne, WY 82003
Phone:  307/634-3210
Facsimile:  307/778-7118
cannon@davisandcannon.com
mark@davisandcannonchey.com

John A Hutchings (*pro hac vice*)
Dill Dill Carr Stonbraker & Hutchings, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:         (303)777-3737
Facsimile:     (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| RUSSELL C. FIELDGROVE, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.10CV0104-D |
| | ) | |
| DENNIS R. LAWRENCE, et al | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT STEVE HOLMES'**
**MOTION TO DISMISS**

On June 2, 2010, Plaintiffs Russell C. Fieldgrove and Mary Jane Fieldgrove (the "Fieldgroves") and Cecil H. Fieldgrove Trust, Cecil H. Fieldgrove, Trustee (the "Fieldgrove Trust") instituted this action by the filing of a Complaint and Jury Demand (Doc. 1).  (The

Fieldgroves and the Fieldgrove Trust are collectively referred to as the "Plaintiffs")  Unless otherwise noted the reference to "Doc" refers to documents filed in the above captioned case. On August 5, 2010, pursuant to F.R.Civ.P. 15(a)(1), Plaintiffs filed an Amended Complaint and Jury Demand (Doc. 30).  The only difference between the Complaint and Jury Demand and Amended Complaint and Jury Demand was the addition of Defendant Debra Harrawood White. The Motion to Dismiss of Steve Holmes ("Holmes") requests dismissal of all of Plaintiffs' claims against him contained in the Amended Complaint.

Plaintiffs' Amended Complaint asserts four claims for relief against Holmes of:

1.      First Claim for Relief for violation of 15 U.S.C. § 78j(b) ("Section 10(b)") and 7 C.F.R. § 240.10b-5 ("Rule 10b-5");

2.      Seventh Claim for Relief for common law fraud;

3.      Ninth Claim for Relief for negligence; and

4.      Tenth Claim for Relief for breach of fiduciary duty.

Holmes' Motion to Dismiss seeks dismissal of all of the foregoing claims for relief against him pursuant to F.R.Civ.P. 12(b)(2), 12(b)(3), and 12(b)(6).  Holmes' Motion to Dismiss in the present case is identical to the Motion to Dismiss of Steve Holmes in the related cases of *Naomi L. Miles Revocable Trust, Naomi L. Miles, Trustee, et al v. Dennis R. Lawrence, et al*, Case No. 10-CV-0034 currently pending in this Court (the "*Miles* case") (*Miles* Doc. 39), and the *Martha W. Gibbs Revocable Trust, Susan Gibbs, Scott M. Gibbs, and James W. Gibbs, Trustees, et al v. Dennis R. Lawrence, et al,* Case No. 10-CV0120 currently pending in the Court (The "*Gibbs* Cases") except in the following respects:

1.      In the *Miles* case, Plaintiffs asserted a claim for relief against Holmes pursuant 15

U.S.C. § 77l(a)(2) while in the present case, Plaintiffs did not assert such claim against Holmes;

2.      In the *Miles* case, Plaintiffs asserted a claim for relief against Holmes under the Wyoming Securities Act while in the present case, Plaintiffs have not asserted a claim against Holmes under the Wyoming Securities Act; and

3.      In the present case, Plaintiffs have asserted a claim against Holmes for breach of fiduciary duty while in the *Miles* case, no such claim was asserted against Holmes.

4.      The *Gibbs* case asserts claims against Holmes for violation of the Wyoming Securities Act and violation of the Texas Securities Act.

On August 19, 2010, this Court entered an Order Consolidating Cases for purposes of discovery in this case, the *Miles* case, and the *Gibbs* case (Doc. 35, *Gibbs* Doc. 43, *Miles* Doc. 107.)  Further, on July 28, 2010, immediately following a Telephonic Status Conference in this case, the *Gibbs* case, and the *Miles* case, Minutes of the Status of the Conference were entered in the docket of each such case (Doc. 28, *Gibbs* Doc. 37, *Miles* Doc. 104).  Pursuant to the Minutes of the Telephonic Status Conference in all three cases, the Court advised the parties they may adopt and incorporate by reference motions or portions thereof filed in one or more of the related cases into one or more of the other related cases.

In the *Miles* case, Holmes filed a Declaration of Steve Holmes in support of his Motion to Dismiss (*Miles* Doc. 41).  On August 25, 2010, Holmes filed in this case, the *Gibbs* case, and the *Miles* case, a combined Declaration of Steve Holmes (Doc. 43-1).  The August 25, 2010 Declaration of Steve Holmes is identical to the March 29, 2010 Declaration of Steve Holmes (*Miles* Doc. 41) except that in the August 25, 2010 Declaration of Steve Holmes, paragraph 16 from the Declaration of Steve Holmes filed in the *Miles* case is deleted.  Other than paragraph 4

of the Declaration of Steve Holmes (*Miles* Doc. 41, Doc. 43-1), the Declaration is directed to his Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(2) and 12(b)(3).

Paragraph 4 of the Declaration of Steve Holmes (*Miles* Doc. 41, Doc. 43-1) purports to raise a factual issue as to when he resigned as the purported General Counsel of Striker Petroleum, LLC ("Striker") and his self-proclaimed lack of involvement with the sale of Striker securities. These are factual issues not properly to subject to resolution on a 12(b)(6) Motion to Dismiss.

## PERSONAL JURISDICTION EXISTS IN THIS DISTRICT OVER HOLMES IN THIS CASE

The jurisdictional facts related to personal jurisdiction over Holmes in this case are no different from those in the *Miles* case. Holmes' argument for dismissal pursuant to F.R.Civ.P. 12(b)(2) for lack of personal jurisdiction in this case is identical to his argument in the *Miles* case. Therefore, pursuant to this Court's advisement that the parties may adopt and incorporate by reference portions of previously filed motions or portion thereof in one or more other related cases into another of the related cases, Plaintiffs hereby adopt and incorporate by reference, as if fully set forth herein, Plaintiffs' Response to Holmes' Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(2) filed in the *Miles* case (Doc. 48, pp. 2-6).

## VENUE IS PROPER IN THIS DISTRICT

Holmes asserts no new facts or legal arguments in his Motion to Dismiss in this case as to why venue is improper or this case should be transferred than he did in the *Miles* case. The facts and law as to the applicability of venue in this District in this case are no different than the facts and law as to venue being proper in the *Miles* case. Accordingly, Plaintiffs adopt and incorporate herein by reference, as if fully set forth therein, their argument in response to

4

Holmes' Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(3) filed in the *Miles* case (Doc. 48, pp. 6-9).

## HOLMES HAS NOT ESTABLISHED A TRANSFER OF VENUE UNDER 28 U.S.C. § 1404(a) is Proper

Holmes' assertion for transfer of venue pursuant to 28 U.S.C. § 1404(a) is identical to his assertion in the *Miles* case that this Court should transfer this case pursuant to 28 U.S.C. § 1404(a).  The facts and law applicable thereto on this issue are no different in this case than in the *Miles* case.  Accordingly, Plaintiffs adopt and incorporate by reference, as if fully set forth herein, their response to Holmes' Motion that this Court transfer this case pursuant to 28 U.S.C. § 1404(a) filed in the *Miles* case (*Miles* Doc 48, pp. 9-11).

## PLAINTIFFS ADEQUATELY STATE ALL CLAIMS FOR RELIEF AGAINST HOLMES

The Fieldgroves assert claims for liability against Holmes based upon their purchase of Striker Series B Debentures purchased on December 21, 2006 in the amount of $300,000.  The Fieldgrove Trust asserts claims against Holmes based upon its purchase on December 21, 2006 of $400,000 of Striker Series B Debentures and its purchase on June 22, 2007 of $90,000 of Striker Series B-2 Debentures.  Holmes admits that on the date of purchase of the Striker Series B Dentures by the Plaintiffs in the aggregate amount of $700,000, he was the General Counsel of Striker Petroleum, LLC ("Striker") (Declaration of Steven Holmes, ¶ 4 (*Miles* Doc. 41, Doc. 43-1); also see Complaint in the case of *Securities and Exchange Commission v. Striker Petroleum, LLC, et al*, Case No. 09-CV-02304-D, United States District Court for the Northern District of Texas ("Striker Litigation Complaint") (*Miles* Doc. 48-2, pp. 9-10), wherein the Securities and Exchange Commission alleges that until February of 2007 Holmes was the General Counsel of

Striker and was, with respect to the Striker Series A, Series B, and Series B-2 Debentures, the purported "independent third party trustee" both prior to and subsequent to the February 2007 date.  The SEC further alleges in the Striker Litigation Complaint, subsequent to February of 2007, Holmes continued to perform legal work for Striker and served as the "independent third party trustee" for the Series B-3 and Series B-4 Striker Debentures).

The Confidential Private Placement Memorandum for the Striker Series B Debentures specifically identifies Holmes as the General Counsel of Striker and includes an extensive biography of Holmes (*Miles* Doc. 94-4, pp. 22, 23).   The Confidential Private Placement Memorandum for the Striker Series B-2 Debentures  also identifies Holmes as the General Counsel of Striker and, again, contains an identical extensive biography of Holmes (*Miles* Doc. 70, pp. 27, 28).   The Confidential Private Placement Memorandum for the Striker Series A Debentures identifies Holmes as the General Counsel and Chief Operating Officer (*Miles* Doc. 94-2, pp. 22, 23). The Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6) and/or Uniform Limited Offering Exemption ("Form D") filed with the United States Securities and Exchange Commission with respect to various offerings of Striker, identify Holmes as an Executive Officer of Striker (*Miles* Doc. 90-3 and Doc. 90-4).

Plaintiffs in *Miles* filed a Request that this Court take judicial notice of the above-referenced Form D's and the Striker Litigation Complaint (*Miles* Doc. 90).  A Court may take judicial notice of its own files and records as well as facts which are a matter of public record without converting a motion to dismiss into a motion for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).  This Court may also consider on a motion to dismiss without converting such motion to a motion for summary judgment, documents referred to in the

Amended Complaint.  Plaintiffs have referred to the Confidential Private Placement Memoranda of the Striker Series A, Series B, and Series B-2 Debentures (Amended Complaint, ¶ 29 as to all three Series, and other paragraphs, too numerous to cite, containing references to Series B and Series B-2 Debentures).   The Court's consideration of the Confidential Private Placement Memoranda in determining Holmes' Motion to Dismiss Pursuant to Rule 12(b)(6) is proper. *Chambers v. Time Warner*, 282 F.3d 147, 152-53 (2nd Cir. 2002).

Plaintiffs' allegations which support their claims against Holmes are detailed and sufficient to support the claims stated.  Plaintiffs allege the following:

1.      At various times, Holmes was the Vice President, General Counsel, Chief Operating Officer and/or outside legal counsel of Striker (Amended Complaint, ¶ 25 and 76).

2.      Plaintiffs allege in detail Striker's fraudulent Ponzi scheme (Amended Complaint, ¶¶ 28-35; also see Striker Litigation Complaint, *Miles* Doc. 48-2).

3.      The false representations contained in the Confidential Private Placement Memoranda for the Series B and Series B-2 debenture offerings that the debentures would be collateralized by oil and gas properties and Striker would appoint an independent third party trustee to hold legal title to the collateral for the benefit of the debenture holders.  Although not specifically named in the Confidential Private Placement Memoranda, Holmes was, in fact, the purported "independent third party trustee." (Amended Complaint, ¶¶ 34, 61(c), 62(b) and 78).

4.      Holmes, as any of the Vice-President, General Counsel, Chief Operating Officer, outside legal counsel of Striker and/or purported independent third party trustee of the Striker Debentures  was intimately familiar with the business and operation of Striker, its subsidiaries, and affiliates (Amended Complaint, ¶ 99).

5.      Holmes knew he was to serve as the purported independent third party trustee for the Striker Debentures  and further knew that he was neither "independent" nor a "third party." Thus, Holmes knew that the Private Placement Memoranda for the Series B and Series B-2 Striker Debenture offerings were false and misleading, containing untrue statements of material fact with respect to the existence of an independent third-party trustee (Amended Complaint, ¶ 100).

6.      Holmes, as General Counsel, Vice President, Chief Operating Officer, outside legal counsel and/or purported independent third party trustee knew, or was reckless in not knowing, that Striker was operating a fraudulent Ponzi scheme as described in the Amended Complaint (Amended Complaint, ¶ 101).

7.      Holmes, as General Counsel, Vice President Chief Operating Officer, outside legal counsel and/or purported independent third party trustee for the Striker debenture holders owed a duty not to participate in any way in the offer and sale of the Striker Debentures  through Confidential Private Placement Memoranda containing untrue statements of material fact and omission to state material facts (Amended Complaint, ¶ 102).

8.      Holmes breached the above-described duties to the Plaintiffs by being a primary and material participant in Striker's fraudulent Ponzi scheme and by aiding and abetting Striker's fraudulent Ponzi scheme (Amended Complaint, ¶ 102).

9.      Holmes, through the Confidential Private Placement Memoranda of Striker Series B and Series B-2 Debentures made untrue statements of material fact (Amended Complaint, ¶¶ 61, 78, 109(b)).

10.      Holmes through offering documents, including the Confidential Private

Placement Memoranda, in the Series B and Series B-2 Debentures omitted to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading (Amended Complaint, ¶¶ 62, 78, 110).

11.     Holmes engaged in scheme liability acts in violation of Rule 10b-5(a) and (c) (Amended Complaint, ¶¶ 108 and 111, respectively).

<u>**Plaintiffs' Complaint Passes the Plausibility Test**</u>.

In Plaintiffs' Response to Defendant Steve Holmes' Motion to Dismiss (*Miles* Doc. 48, pp. 12-13) Plaintiffs have set forth the applicable standard to be utilized by a Court in determining a motion to dismiss pursuant to Rule 12(b)(6).  Pursuant to this Court's advisement of July 28, 2010, Plaintiffs hereby adopt and incorporate by reference the first two paragraphs of the section entitled "Plaintiffs' Complaint Passes the Plausibility Test" (*Miles* Doc. 48, pp. 12-13) into this Response as if fully set forth herein.

The Amended Complaint is very specific alleging in detail the Striker fraudulent Ponzi scheme as well as the other fraudulent Ponzi scheme transactions.  The Amended Complaint alleges details of Plaintiffs' investments, including the dates of specific meetings, specific statements made at specific meetings and by whom such statements were made, the specific dates and amounts of the security transactions, and the roll of each Defendant in the various fraudulent investments, including Holmes' role.  These allegations, taken collectively and as true, which at this stage they must be, pass the plausibility test.

<u>**The Group Publication Doctrine Applies to Holmes**</u>

Plaintiffs do not allege that Holmes made directly to them any material misrepresentation.  Plaintiffs allege Holmes involvement in Striker's fraudulent Ponzi scheme

and the making of material misrepresentations and omissions as General Counsel and one of the executive officers of Striker, and its subsidiaries and affiliates, outside legal counsel, and the purported independent third party trustee.  In such roles, Holmes was involved in the day-to-day operations and management of Striker, and engaged in the fraudulent scheme in violation of Rule 10b-5(a) and (c), which is "scheme liability," and through the Private Placement Memoranda of the Series B and Series B-2 Debentures, made untrue statements of material fact and omitted to disclose material facts.  Plaintiffs have pled liability against Holmes pursuant to the "group publication doctrine."

Although there is a split among the Circuits as to whether the group publication doctrine can satisfy the heightened requirements of the Private Securities Litigation Reform Act (PSLRA), the Tenth Circuit recognizes the group publication doctrine and that it can satisfy the PSLRA's heightened pleading requirements.  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253-54 (10th Cir. 1997).  Since *Schwartz*, numerous cases of District Courts within the Tenth Circuit recognized the viability of the group publication doctrine as being sufficient to satisfy the pleading requirements of the PSLRA.  *Schaffer v. Evolving Systems, Inc.*, 29 F. Supp. 2d 1213, 1225 (D.Colo. 1998), *In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 119 F. Supp. 2d 1156, 1165 (D.Colo. 2000), *In re Qwest Communications International, Inc. Securities Litigation*, 387 F. Supp. 2d 1130, 1145-46 (D.Colo. 2005).  Additionally, the Second Circuit and Ninth Circuit, where a significant number of securities fraud cases are decided, also recognized the viability of the group publication doctrine as being sufficient to satisfy the heightened pleading requirements of the PSLRA.  *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1061-62 (9th Cir. 2000), *In re Van Der Moolen Holdings N.V. Securities Litigation*, 405 F.

Supp. 2d 388, 398-99 (S.D. N.Y. 2005).

The group publication doctrine allows plaintiffs to rely on a presumption that statements in prospectuses, registration statements, and other group published information are the collective work of those individuals with direct involvement in the every day business of the company. *In re Van Der Moolen Holdings N.V. Securities Litigation*, 405 F. Supp. 2d at 398. The Southern District of New York limits the group publication doctrine as applicable only to cognizable corporate insiders with daily roles in the relevant companies or transactions. *Id*. at 398-99. A Ponzi scheme is a form of financial fraud in which money invested by later investors is used to pay promised returns to earlier investors. Plaintiffs have alleged Holmes was the General Counsel, Vice President, Chief Operating Officer and/or outside counsel of Striker and its subsidiaries and affiliates, and the purported independent third party trustee for the Plaintiffs and all debenture holders, (Amended Complaint, ¶¶ 25, 34, and 99-102 ). Holmes accepted the Fieldgrove Trust's subscription for $400,000 of Series B Debentures as Striker's Vice-President (Amended Complaint ¶ 76). He is identified as the General Counsel in the Confidential Private Placement Memoranda for the Striker Series B and Series B-2 Debentures purchased by the Plaintiffs under "Management" and his biography is contained in the "Management" section of the Confidential Private Placement Memoranda (*Miles* Doc. 94-4, pp. 22, 23; *Miles* Doc. 70, pp. 27, 28). Although not identified in the Private Placement Memoranda, Holmes was, in fact, the purported "independent third party trustee" referred to in the Series B and Series B-2 Private Placement Memoranda (*Miles* Doc. 94-4, pp. 4, 25; *Miles* Doc. 70, p. 30). Further, in Form D filings with the Securities and Exchange Commission Holmes is identified as an executive officer of Striker and various of the Striker subsidiaries and affiliates engaged in securities

offerings, including Striker Debenture Offerings (Exhibits A and B to the Affidavit of John A. Hutchings, *Miles* Doc. 90-3 and 90-4). The allegations of the Amended Complaint, together with the Confidential Placement Memoranda and the Form D's, of which this Court may take judicial notice, place Holmes in the role of a corporate insider with an active daily role in Striker and its subsidiaries and affiliates. Further, Holmes played an additional material role in the fraudulent Ponzi scheme by serving as the purported "independent third party trustee" when he was neither "independent" or a "third party." Although the Tenth Circuit and District Courts of the Tenth Circuit have not so restricted the group publication doctrine as has the United States District Court for the Southern District of New York, Holmes would be a person within the scope of the group publication doctrine even in the Southern District of New York.

Under the group publication doctrine, the plaintiff does not have to point to one or more specific statements made by an individual defendant. Identifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group published documents which presumably involve collective actions of corporate directors and officers. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d at 1246, 1254. Prospectuses, registration statements and similar statements, such as confidential private placement memoranda, are subject to the presumption of collective action. *In re Qwest Communications International, Inc. Securities Litigation*, 387 F. Supp. 2d at 1144. The Plaintiffs allege Striker's fraudulent Ponzi scheme through group published private placement memoranda (Amended Complaint, ¶¶ 28-35), Holmes's status as a corporate insider (Amended Complaint, ¶¶ 25, 34 and 99-102), the making of untrue statements of material fact through the group published private placement memoranda (Amended Complaint, ¶¶ 29, 30, 32, 33, 34, 61, 78, 99-102 and 109(b)),

and the omission to state material facts (Amended Complaint, ¶¶ 32, 62 and 110), as well as

what is known as scheme liability under Rule 10b-5(a) and (c) (Amended Complaint, ¶¶ 28-35,

108 and 111).  All of these statements and actions are subject to a presumption of collective

action by corporate insiders, such as Holmes, under the group publication doctrine.  *Id*. at 1144-

45.

<u>**The Plaintiffs Allege a Strong Inference of Scienter**</u>

Holmes argues that the Plaintiffs have not adequately alleged scienter under the PLSRA

which requires that the Amended Complaint state with particularity facts giving rise to a strong

inference that Holmes acted with the required state of mind.  15 U.S.C. § 78u-4(b)(2).  Scienter

has been defined by the United States Supreme Court to mean a mental state embracing an intent

to deceive, manipulate or defraud.  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S. Ct. 1375, 47

L. Ed. 2d 688, n. 12 (1976).  The United States Supreme Court in *Ernst & Ernst* did not

determine whether recklessness may be sufficient for establishing scienter.  *Id*.  The Tenth

Circuit recognizes recklessness satisfies the scienter requirement for violation of Section 10(b)

and Rule 10b-5.  *Hackbart v. Holmes*, 675 F.2d 114, 117 (10th Cir. 1982).  Recklessness is

defined as conduct that is an extreme departure from the standards of ordinary care and which

presents a danger of misleading buyers or sellers that is either known to the defendant or is so

obvious that the actor must have been aware of it.  *Anixter v. Home-Stake Production Company*,

77 F.3d 1215, 1232 (10th Cir. 1996).  In *City of Philadelphia v. Fleming Companies, Inc.* 264 F.

3d 1245 (10th Cir. 2001), the Tenth Circuit reaffirmed the recklessness standard as sufficient to

establish scienter and specified the requirements for pleading recklessness under the PSLRA.

Under the standard established by the PSLRA, a plaintiff must plead facts raising a strong

inference of intentional conduct or reckless conduct, which is conduct that is an extreme departure from the standards of ordinary care and which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it. *Id*. at 1259-60.

In *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007), the United States Supreme Court clarified the standard by which Courts should determine whether a plaintiff has adequately plead the inference of scienter. Initially, the Court noted that to qualify as "strong" the inference of scienter must be more than merely plausible or reasonable, but must be cogent and at least as compelling as any opposing inference of non-fraudulent conduct. *Id*. 551 U.S. at 314, 127 S. Ct. at 2504-05. *Webster's Third New International Dictionary*, 1158 (1986) defines "inference" as "the act of passing from one or more propositions . . . considered as true to another the truth of which is believed to follow from the former". The Court in *Tellabs* established three guidelines to be followed where a District Court is faced with a Rule 12(b)(6) motion to dismiss a Section 10(b) claim for failure to adequately plead scienter. The first is that the Courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true. *Tellabs*, 551 U.S. at 322, 127 S. Ct. at 2509. Secondly, the District Court must consider the complaint in its entirety as well as other sources ordinarily examined when ruling on 12(b)(6) motions to dismiss, including documents referred to in the complaint and matters of which the Court may take judicial notice. The inquiry is then whether all facts alleged, <u>taken collectively</u>, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets this standard. *Id*., 551 U.S. at 322-23, 127 S. Ct. at

2509.  Finally, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the Court must take into account plausible opposing inferences.  *Id*., 551 U.S. at 323, 127 S. Ct. at 2509-10.  The *Tellabs* Court also provided additional guidance.  The strength of the inference cannot be decided in a vacuum.  The inquiry is inherently comparative.  To determine whether a plaintiff has alleged facts that give rise to the required strong inference of scienter, the Court must consider plausible non-culpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.  The inference that the defendant acted with scienter need not be irrefutable or a smoking gun or even the most plausible of competing inferences.  *Id*., 551 U.S. at 323-24, 127 S. Ct. at 2510.  A complaint will survive if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.  *Id*., 551 U.S. at 324, 127 S. Ct. at 2510.  In sum, when the <u>allegations are accepted as true</u> and <u>taken collectively</u>, would a reasonable person deem the inference of scienter at least as strong as any opposing inference.  *Id*., 551 U.S. at 326, 127 S. Ct. at 2511.  Subsequent to *Tellabs*, the Second Circuit in *ECA v. JP Morgan Chase Company*, 553 F.3d 187, 199 (2nd Cir 2009) recognized at least four separate circumstances which may give rise to a strong inference of the requisite scienter.  These circumstances are where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud, (2) engaged in deliberate illegal behavior, (3) knew facts and had access to information suggesting that their public statements were not accurate, and (4) failed to check information they had a duty to monitor.

In *In re Qwest Communications International Securities Litigation*, the Court held that the application of the group publication doctrine standing alone does not demonstrate a strong

inference of scienter as there must additionally be some indication that the individual defendant was aware of the falsity of the statement. *Id*. at 1145, citing *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1105-6 (10th Cir. 2003). Plaintiffs have alleged Holmes was the General Counsel, Vice President, Chief Operating Officer and/or outside legal counsel of Striker as well as purported "independent third party trustee" for the debenture holders (Complaint, ¶¶ 25, 34, 76 and 99-102). The Confidential Private Placement Memoranda for the Series B and Series B-2 Debentures purchased by the Plaintiffs, identifies Holmes as the General Counsel and includes his biography which is that of an individual with a strong legal background in the oil and gas industry. Form D's filed with the United States Securities and Exchange Commission for Striker and its subsidiaries and/or affiliates engaged in the fraudulent Ponzi scheme identify Holmes as an executive officer of each of such entities. Plaintiff's allegations of a pervasive and long standing Ponzi scheme combined with the contents of the Confidential Private Placement Memoranda and Form D's, of which this Court can properly consider and take judicial notice, provides the additional indication of Holmes's awareness of the fraudulent scheme and false statements.

The fraudulent Striker Ponzi scheme was a pervasive and long standing scheme involving tens of millions of dollars and hundreds of investors over approximately two years (Amended Complaint, ¶¶ 28 and 29) and Striker Litigation Complaint (*Miles* Doc. 48-2). Allegations of pervasive and long standing fraud may support a strong inference of scienter under the PSLRA. *In re Qwest Communications International, Inc. Securities Litigation*, 387 F. Supp. 2d at 1147. *In re MicroStrategy, Inc. Securities Litigation*, 115 F. Supp. 2d 620, 635 (E.D. Va. 2000) (number, size, timing, nature, frequency, and context for the accounting manipulations combined

with other circumstances can provide support for a strong inference of scienter), *In re Raytheon Securities Litigation*, 157 F. Supp. 2d 131, 147-48 (D. Mass. 2001) (magnitude of accounting overstatements, combined with other circumstances, can support strong inference of scienter).  In this case, the scope and magnitude of the fraud together with the allegations of Holmes's roles as General Counsel, Vice-President, Chief Operating Officer, outside legal counsel, and purported "independent third party trustee" provide the additional indication and substantial support for a strong inference of scienter on the part of Holmes.

The Plaintiffs do not have to allege or prove that Holmes knew Striker and its subsidiaries and affiliates was engaged in a fraudulent Ponzi scheme.  The Tenth Circuit as well as the Second Circuit recognizes that recklessness will satisfy the scienter standard under the PSLRA.  *City of Philadelphia v. Fleming*, 264 F.3d at, 1259 *In re Van Der Moolen Holdings N.V. Securities Litigation*, 405 F. Supp. 2d at 404-05.  The Second Circuit has held that allegations of recklessness are sufficient to meet the scienter requirement where plaintiffs allege facts demonstrating that defendants failed to review or check information that they had a duty to monitor or ignored obvious warning signs.  *Novac v. Kasaks*, 216 F.3d 300, 308-09 (2nd Cir. 2000).  At a minimum, as the "independent third party trustee" for the debenture holders, including the Plaintiffs, with responsibility for holding title to the collateral consisting of the oil and gas properties for the benefit of debenture holders, Holmes knew or should have known of the inadequacy of the collateral and, thus, that Striker was, in fact, not using offering proceeds to purchase oil and gas properties as represented.  Furthermore, as first General Counsel, and then outside legal counsel, there is a strong inference that Holmes knew or should have known of the nature and extent, or lack thereof, of oil and gas properties purchased by Striker with offering

proceeds.   Holmes served multiple integral roles with Striker as first General Counsel, then outside legal counsel, and acted as the purported "independent third party trustee."   All of these roles were an integral part of Striker's fraudulent Ponzi scheme.   Under such circumstances, the facts as alleged in the Amended Complaint, taken collectively give rise to a strong inference of scienter at least under the recklessness standard of the Tenth Circuit.

In *Howard v. Everex Systems, Inc.*, *supra*, the Ninth Circuit evaluated an officer's liability for false financial statements contained in filings with the Securities and Exchange Commission and signed by corporate officers.   Private placement memoranda are not filed with the Securities and Exchange Commission and typically are not signed by the officers.   However, in the present case, the Confidential Private Placement Memoranda identifies only five individuals as "Management" of Striker in the offering of the Series B and Series B-2 Convertible Debentures to the Plaintiffs.   These five individuals are: Mark Roberts, President and Chief Executive Officer; Christopher Pippin, Vice President; Steve Holmes, General Counsel; Richard Holmes, Chief Financial Officer; and Dave Knepper, Engineering Manager (*Miles* Doc. 94-4, p. 22, *Miles* Doc. 70, p. 27).   (Mark Roberts and Christopher Pippin are defendants in the Striker Litigation and thus the Plaintiffs are precluded from bringing claims against them.)   The small management group specifically identified in the Private Placement Memoranda renders the Ninth Circuit's holding as to the liability of corporate officers who sign documents containing false statements equally applicable.   When a corporate officer signs a document on behalf of the corporation, any such signature would be rendered meaningless unless the officer believes the statements in the document are true.   *Howard v. Everex Systems, Inc.*, 228 F.3d at 1061.   Similarly, when an individual allows himself to be identified as part of the

small management group, holding a key management position, such as General Counsel, in a private placement memorandum, the same principle holds true.  The Ninth Circuit went on to hold that signors of documents should be held responsible for statements in a document.  *Id*. Similarly, those small group of persons identified as management in a confidential private placement memorandum offering document, which includes their biography, lend their name and credibility to the offering and, as such, occupy the same status as the signor of a document filed with the Securities and Exchange Commission.  They should similarly be held responsible for the statements contained in the offering documents.

By placing responsibility in corporate officers and others in a fiduciary position such as a trustee to ensure the validity of corporate filings, investors are further protected from misleading information.  *Id*., *Central Bank of Denver N.A. v. First Interstate Bank of Denver N.A.*, 511 U.S. 164, 171, 114 S. Ct. 1439, l28 L. Ed. 2d 119 (1994) (the securities acts embrace a fundamental purpose which is to substitute a philosophy of full disclosure for the philosophy of *caveat emptor*).  Key officers of a company, such as general counsel, who are part of executive management, and persons serving as trustees for the benefit of investors, should not be allowed to make important false statements knowingly or recklessly and yet still shield themselves from liability to investors simply by contending they were not involved in the preparation of those statements.  *Howard v. Everex Systems, Inc.*, 228 F.3d at 1062.  If such was held to be the law, the securities laws would be significantly weakened.  Holding key corporate officers, such as general counsel and others involved in the executive management, responsible for false statements contained in offering documents furthers the purpose of the securities laws of full disclosure.

Although the elements of a claim under Section 10 and Rule 10b-5 are generally stated as requiring a material misrepresentation or omission to state a material fact (Rule 10b-5(b)), Rule 10b-5(a) and (c) also encompass claims for what is known as "scheme liability." To state a claim under Rule 10b-5(a) or (c), a plaintiff must allege that a defendant:  (1) committed a manipulative or deceptive act; (2) in furtherance of the alleged scheme to defraud, (c) scienter, and (d) reliance.  *In re Qwest Communications International, Inc. Securities Litigation*, 387 F. Supp. 2d at 1143.  Plaintiffs have alleged violation of Rule 10b-5(a) and (c) against Holmes. Plaintiffs have alleged Striker's fraudulent Ponzi scheme (Amended Complaint, ¶¶ 28 through 35) and provided to this Court the Striker Litigation Complaint (*Miles* Doc. 48-2) of which this Court may take judicial notice.  *Tal*, 453 F.3d at 1264, n. 24.  Plaintiffs allege Holmes participated directly and/or indirectly in the fraudulent Ponzi scheme by acting as the purported "independent third party trustee" as well as by serving as General Counsel, Vice-President, Chief Operating Officer and/or outside legal counsel (Amended Complaint, ¶¶ 25, 34 and 99-102). Plaintiffs have adequately alleged facts giving rise to a strong inference of scienter as discussed above.  Plaintiffs have also alleged reliance upon the Confidential Private Placement Memoranda of the Striker Offerings (Amended Complaint, ¶¶ 74, 77 and 116).  The group publication doctrine includes scheme liability under Rule 10b-5(a) and (c).  *In re Qwest Communications International, Inc. Securities Litigation,* 387 F. Supp. 2d at 1146-47.

When all of the facts alleged in the Amended Complaint, together with those which this Court may properly consider and take judicial notice of are taken collectively, they give rise to a strong inference of scienter of Holmes under Tenth Circuit law.  Holmes offers no plausible opposing inferences with which this Court can compare the strong inferences of scienter alleged

by the Plaintiffs.  The inferences of Holmes's scienter do not at this stage need to be irrefutable. Such inferences only need be as compelling as any opposing inference which could be drawn. *Telabs v. Makor Issues & Rights, Ltd.*, 551 U.S. at 323-24, 127 S. Ct. at 2510.  Taking Plaintiffs' allegations as true, and taking them collectively, under the law of the Tenth Circuit, which includes the recklessness standard for scienter and the group publication doctrine, the inference of scienter of Holmes is at least as strong as any opposing inference.  Plaintiffs have, therefore, adequately plead scienter on the part of Holmes under the standards of the PSLRA.

### Plaintiffs Have Properly Plead Common Law Fraud Against Holmes

Holmes raises two issues by which he seeks judgment on the pleadings on Plaintiffs' Seventh Claim for Relief of common law fraud.  Holmes has failed to plead the elements of common law fraud claim under Wyoming law and that Plaintiffs have failed to plead the required state of mind under F.R.Civ. P. 9(b).

The elements of a common law fraud claim in Wyoming are:  (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages.  *Birt v. Wells Fargo Home Mortgage, Inc.*, 75 P.3d 640, 656 (Wyo. 2003). The Plaintiffs admit that Holmes did not, in person, either verbally, or by handing a written document to the Plaintiffs, make a false representation.  However, as has been discussed above, Plaintiffs have alleged facts that under the group publication doctrine, Holmes had various material roles in Striker, including Vice President, General Counsel, Chief Operating Officer, outside legal counsel, and purported "independent third party trustee."  In such roles, Holmes participated in the offering of the fraudulent securities, including by his participation in the

preparation and dissemination of the Confidential Private Placement Memoranda which contained untrue statements of material facts and omission to state material facts (Amended Complaint, ¶¶ 25, 28-35, 61, 62, 78, 99-102, 108, 109(b), 110, 111, 153 and 154).  There is no reason why the group publication doctrine as applied to claims under Section 10(b) and Rule 10b-5 should not be equally applicable to common law fraud claims in Wyoming.  There exists no greater justification for allowing an individual such as Holmes, who is presumed to have participated in the preparation of a document intended to, and which did induce, an investment by the Plaintiffs, to escape liability upon a Wyoming state common law fraud claim, than under a Section 10(b) and Rule 10b-5 claim.  Holmes does nothing to attempt to rebut the presumption under the group publication doctrine that in his many roles he materially participated in Strikers fraudulent Ponzi scheme.

Holmes asserts that Plaintiffs fail to comply with the requirements of Rule 9(b) by failing to allege the fraud with particularity and to adequately allege his state of mind.  Plaintiffs have discussed at length above the particularity of Holmes's role in Striker's fraudulent scheme. These pleading requirements have satisfied the heightened pleading requirements of the PSLRA and are sufficient to satisfy the Rule 9(b) pleading requirements of a common law fraud claim. *In re Qwest Communications International, Inc. Securities Litigation*, 387 F. Supp. 2d at 1153. Under Rule 9(b), intent is required to be only generally alleged and Plaintiffs have alleged facts of general intent.  Plaintiffs adequately plead a claim for relief of common law fraud against Holmes.

## **Plaintiffs Adequately Plead a Negligence Claim Against Holmes**

Holmes attacks Plaintiffs' negligence claim against him alleging it is barred by the

Statute of Limitations of W.S. § 1-3-107 and that the negligence claim fails to allege any duty owed by Holmes to the Plaintiffs.  Both of these contentions are clearly erroneous.

W.S. §1-3-107 sets forth a two year from date of discovery Statute of Limitations for professional negligence claims.  Plaintiffs' negligence claim incorporates all of the allegations of the Amended Complaint preceding the negligence claim (Amended Complaint, ¶ 165).  Plaintiffs allege they did not actually discover the untruth or omissions regarding Striker's fraudulent Ponzi scheme until on or about December 3, 2009, upon the filing of the Striker Litigation Complaint (Amended Complaint, ¶¶ 129, 138).  Plaintiffs further allege they could not have reasonably discovered the untruths or omissions of Striker's fraudulent Ponzi scheme prior to January of 2009, when payments upon the Series B Debentures  and Series B-2 Debentures  of Striker ceased as, until such time, there was no indication of the untruths or omissions of Striker's fraudulent Ponzi scheme (Amended Complaint, ¶¶ 129, 138).  These dates are well within the two years from the date of filing of the Complaint in this case.  However, W.S. § 1-3-107 is inapplicable to Plaintiffs' negligence claim as such statute applies to a claim for "professional negligence" and Plaintiffs' Ninth Claim for Relief against Holmes is a claim for negligence.   The applicable statute of limitations for a negligence claim is W.S. § 1-3-105(a)(iv)(D) which establishes a four year statute of limitations for negligence claims.  Plaintiffs' initial Complaint was filed within four years of the negligence alleged in the Amended Complaint.

One of the elements of a negligence claim in Wyoming is a duty owed to the plaintiff by the defendant and a breach of that duty.  *Board of County Commissioners of Teton County v. Bassett*, 8 P.3d 1079, 0186 (Wyo. 2000).  Plaintiffs' Amended Complaint alleges that Holmes, in

one or more of his roles as Vice President, General Counsel, Chief Operating Officer, outside legal counsel, and purported independent third party trustee, owed a duty to the Plaintiffs not to offer and sell the Striker Debentures  through use of Private Placement Memoranda containing untrue statements of material fact and omission to state material facts, and that Holmes breached this duty by, in his various roles with Striker, being a primary and material participant in Striker's fraudulent Ponzi scheme, and by aiding and abetting Striker's fraudulent Ponzi scheme (Amended Complaint, ¶ 102).  Holmes relies upon *Brooks v. Vebre*, 792 P.2d 198 (Wyo. 1990) for the proposition that under Wyoming law attorneys no duties to non-clients.  In fact, under Wyoming law, whether an attorney owes a duty to a non-client is to be assessed on a case by case basis.  *In re Estate of Drwenski,* 83 P.3d 457, 465 (Wyo. 2000) (adopting and tailoring the six factor test articulated in *Lucas v. Hamm*, 364 P.2d 685 (Calif. 1961)); *Jones v. Bass*, 343 F.Supp.2d 1066, 1069 (D.Wyo. 2004).  Plaintiffs' negligence claim is not based exclusively upon Holmes' role at some point in time as outside legal counsel to Striker but includes non-attorney roles of independent third party trustee, Vice President, Chief Operating Officer, and inside general counsel.  Cases dealing with duties owed by attorneys to non-clients are simply inapplicable to Plaintiffs' negligence claim against Holmes in this circumstance.  Plaintiffs' negligence claim alleges the additional requisite elements of proximately caused injury and damage (Amended Complaint, ¶ 168).  Accordingly, Plaintiffs have properly alleged a claim for negligence against Holmes and his motion to dismiss such claims should be denied.

### Plaintiffs Adequately State a Claim for Breach of Fiduciary Duty Against Holmes

Plaintiffs' breach of fiduciary duty claim arises from Holmes' role as Trustee for the Plaintiffs with respect to the Series B and Series B-2 Debentures purchased.  Contrary to

Holmes' assertions, Plaintiffs specifically allege Holmes' status as a Trustee for the benefit of the Plaintiffs, thus, occupying a position of trust and confidence giving rise to a fiduciary duty (Amended Complaint, ¶ 170 and 171).   Generally, a trustee of a trust must act in a fiduciary capacity with respect to trust properties and beneficiaries.  *Kerper v. Kerper*, 780 P.2d 923, 929 (Wyo. 1989) (citing *Restatement (Second) of Trust,* Section 2 at 6 (1959).  Plaintiffs have alleged that as Trustee for their benefit, Holmes owed to them a fiduciary duty of honesty, good faith, fair dealings, and fulfillment of his duties as Trustee in an honest and good faith manner for their benefit (Amended Complaint, ¶ 171).   A trustee has the obligations of a fiduciary (*Gaudina v. Haberman*, 644 P. 2d 159, 167-168 (Wyo. 1982)) and must exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property.  *Kerper v. Kerper*, 780 P.2d at 930 (citing *Restatement (Second) of Trust*, Section 174 at 379 (1959)).   Plaintiffs have specifically alleged how Holmes breached his duty to them including, among others, failing to fulfill his duties as Trustee for their benefit (Amended Complaint, ¶ 172).   A trustee shall take reasonable steps to enforce claims for the trust and defend claims against the trust.  W.S. § 4-10-811.  Finally, Plaintiffs have alleged damage of a loss of their investment in the Series B and Series B-2 Striker Debentures as a direct and proximate result of the breach of fiduciary duty of Holmes (Amended Complaint, ¶ 173).

The fact that Holmes was not identified as the trustee in the Confidential Private Placement Memoranda is not determinative.  The existence of an independent third party trustee in the protection of the investment of the Plaintiffs and other investors is clearly a material fact. A fiduciary is defined as a person having a duty, created by his own undertaking, to act primarily for another's benefit in matters connected with such an undertaking.  *Lee v. LPP Mortgage, Ltd.*

74 P.3d 152, 162 (Wyo. 2003) (citing Black's Law Dictionary, 625 (6th Edition 1990)).  Holmes does not deny he was the purported independent third party trustee nor does he assert that it was not his own undertaking to act as the purported independent third party trustee.  Although Holmes attempts to misdirect the Court's attention by asserting that he resigned from Striker in February of 2007, he continued acting as the independent third party trustee and had not resigned from such position until December of 2008, immediately before Striker defaulted upon payments to the Plaintiffs (Striker Litigation Complaint, ¶¶ 32-33; *Miles* Doc. 48-2, pp. 9, 10).

Plaintiffs have adequately alleged a claim of breach of fiduciary duty against Holmes based on his status as the purported independent third party trustee and therefore his Motion to Dismiss such claim should be denied.

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that Defendant Steve Holmes' Motion to Dismiss Pursuant to Rule 12(b)(2), Rule 12(b)(3), and Rule 12(b)(6) be denied for the reasons set forth herein.

Respectfully submitted this 20th day of September, 2010.

DAVIS & CANNON, LLP

By: *s/*_____
J. Mark Stewart
422 West 26th Street
P.O. Box 43
Cheyenne, WY 82003
Telephone:     (307) 634-3210
Facsimile:      (307) 778-7118
mark@davisandcannonchey.com

Kim D. Cannon
DAVIS & CANNON, LLP
40 South Main
P.O. Box 728
Sheridan, WY 82801
Telephone:      (307) 672-7491
Facsimile:      (307) 672-8955
cannon@davisandcannon.com

John A Hutchings (*pro hac vice*)
DILL DILL CARR STONBRAKER
   & HUTCHINGS, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:          (303)777-3737
Facsimile:      (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing on the 20th day of September, 2010 to the following:

Jeffrey C. Brinkerhoff
Mark W. Gifford
Gifford & Brinkerhoff
jeff@giffordbrinkerhoff.com
mark@giffordbrinkerhoff.com

K Lawson Pedigo
Miller Keffer Bullock & Pedigo
KLPedigo@mkp-law.net

David A. Baugh
Baugh Dalton Carlson & Ryan, LLC
dbaugh@baughdaltonlaw.com

Charles W. Gameros, Jr.
Hoge & Gameros
bgameros@legaltexas.com

Thomas N. Long
Laura Jean Jackson
Long Reimer Winegard
tlong@lrw-law.com
ljackson@lrw-law.com

David F. DeFazio
DeFazio Law Office
david@defaziolaw.com

Jason Tangeman
Anthony Nicholas Goodrich & Tangeman
jtangeman@wyolegal.com

Rick L. Koehmstedt
Schwartz, Bon, Walker & Struder, LLC
rick@schwartzbon.com

Michael T. McConnell
Jared C. Lockwood
McConnell Fleischner Houghtaling &
Craigmile, LLC
mmcconnell@mfhc.com
jlockwood@mfhc.com

Thomas N. Fitzgibbon
Kimberly L. Thigpen
Pfeiffer Thigpen FitzGibbon & Ziontz LLP
tnf@ptflaw.com
klt@ptflaw.com

**and sent either electronically or by mail to:**
Nathan Glossi
605 E. Myrtle Street
Fort Collins, CO 80524
Email: nglossi@hotmail.com

_s/_ _____