Kim D. Cannon (Wyoming State Bar #5-1401)
J. Mark Stewart (Wyoming State Bar #6-4121)
Davis & Cannon, LLP
40 South Main
P.O. Box 728
Sheridan, WY 82801
Telephone:     (307) 672-7491
Facsimile:     (307) 672-8955
cannon@davisandcannon.com
mark@davisandcannonchey.com

John A Hutchings (*pro hac vice*)
Dill Dill Carr Stonbraker & Hutchings, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:     (303)777-3737
Facsimile:     (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| RUSSELL C. FIELDGROVE; MARY JANE FIELDGROVE; and CECIL H. FIELDGROVE TRUST, CECIL H. FIELDGROVE TRUSTEE,<br><br>       Plaintiffs,<br><br>v.<br><br>DENNIS R. LAWRENCE; et al.<br><br>       Defendants. | Case No. 10-CV-104-D |

---

**PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDERS REGARDING MOTION TO COMPEL ARBITRATION AND TO DISMISS CLAIMS AGAINST CAPWEST SECURITIES, INC., CAPSTONE FINANCIAL GROUP, INC., COLORADO CAPITAL HOLDINGS, LLC, PERSONAL MONEY MANAGEMENT, LLC, DAVID LEON SMITH, DALE KEITH HALL, RANDALL POPE, AND NATHANIEL GLOSSI**

---

THIS MATTER is before the Court pursuant to the Motion to Compel Arbitration and to Dismiss Claims Against Defendants CapWest Securities, Inc., Capstone Financial Group, Inc., Colorado Capital Holdings, LLC, Personal Money Management, LLC, David Leon Smith, Dale Keith Hall, Randall Pope, and Nathaniel Glossi (Doc. 73) ("Motion to Compel Arbitration"). The Plaintiffs have filed a Response to the Motion to Compel Arbitration (Doc. ___) and CapWest Securities, Inc. ("CapWest"), Capstone Financial Group, Inc. ("Capstone"), Colorado Capital Holdings, LLC ("CCH"), Personal Money Management, LLC ("PMM"), David Leon Smith ("Smith"), Dale Keith Hall ("Hall"), Randall Pope ("Pope"), and Nathaniel Glossi ("Glossi") (the foregoing are collectively referred to as the "CapWest Defendants") have filed a Reply in Support of their Motion to Compel Arbitration (Doc. ___).  The Court has heard oral argument on the Motion to Compel on _____, 2010.

## FINDINGS OF FACT

1.      Plaintiffs initiated this action on June 2, 2010 by the filing of a Complaint in this Court (Doc. 1).   The Plaintiffs are Russell C. Fieldgrove and Mary Jane Fieldgrove (the "Fieldgroves") and the Cecil H. Fieldgrove Trust, Cecil H. Fieldgrove, Trustee (the "Fieldgrove Trust").   The Court collectively refers the Fieldgroves and the Fieldgrove Trust as the "Plaintiffs".  On August 5, 2010 the Plaintiffs filed an Amended Complaint and Jury Demand (Doc. 30), the sole purpose of which was to add as a Defendant Debra Harrawood White.  The CapWest Defendants' Motion is directed toward this Amended Complaint.

2.      The Amended Complaint consists of eleven claims for relief.  The Fieldgroves and the Fieldgrove Trust bring eight claims for relief against the CapWest Defendants which are: (a) First Claim for Relief for securities fraud under 15 U.S.C. § 78j(b) ("Section 10(b)") and 17 C.F.R. § 240.10b-5 ("Rule 10b-5") asserted against Pope, PMM and CapWest; (b) Second Claim

for Relief for securities fraud under 15 U.S.C. § 78t(a) asserted against Capstone, CCH, and Hall; (c) Fourth Claim for Relief for violation of provisions of the Colorado Securities Act asserted against Pope, CapWest, Capstone, CCH and Hall; (d) Sixth Claim for Relief for professional negligence asserted against Pope; (e)  Seventh Claim for Relief for common law fraud asserted against all CapWest Defendants (f) Eighth Claim for Relief for civil conspiracy asserted against Pope and Capwest; (g) Ninth Claim for Relief for negligence asserted against Pope and CapWest; and (h) Eleventh Claim for Relief for vicarious liability and re*spondeat superior* asserted against CapWest.negligence.  The CapWest Defendants move to dismiss all claims asserted against them pursuant to F.R.Civ.P. 8(a), 9(b), and 12(b)(6) for failure to state a claim upon which relief can be granted.

     3.     The Plaintiffs assert subject matter jurisdiction of this Court over this action pursuant to 15 U.S.C. § 78aa ("Section 27"), 15 U.S.C. § 1331 ("Federal Question Jurisdiction"), and 28 U.S.C. § 1367 ("Supplemental Jurisdiction for State Law Claims") (Amended Complaint, ¶ 7).  The CapWest Defendants do not contest the subject matter jurisdiction of this Court.

     4.     The Fieldgroves allege two separate purchases of securities in private placements. These are: (a) the purchase of $300,000 of Striker Petroleum, LLC Series B Debentures on December 21, 2006; and (b) the purchase of $150,000 of Medical Provider Funding IV promissory notes ("MP IV Notes") on December 1, 2006 (Amended Complaint, ¶ 46).

     5.     The Fieldgrove Trust alleges three separate purchases of securities in private placements.  These are:  (a) the purchase of $400,000 of Striker Petroleum, LLC Series B Debentures on December 21, 2006; (b) the purchase of $200,000 of MP IV Notes on December 21, 2006; and (c) the purchase of $90,000 of Striker Petroleum, LLC Series B-2 Debentures on June 22, 2007 (Amended Complaint, ¶ 47).

6.      Plaintiffs allege that each of the above-described purchases of securities were part of fraudulent Ponzi schemes.  In the case of the Series B and Series B-2 Debentures, Plaintiffs allege they were part of a fraudulent Ponzi scheme conducted by Striker Petroleum, LLC ("Striker") (Amended Complaint, ¶¶ 28-35).  In the case of the purchase of the MP IV Notes, Plaintiffs allege they were part of a fraudulent Ponzi scheme conducted by Medical Capital Holdings, Inc. ("Med Cap") (Amended Complaint, ¶¶ 36-45).

7.      The Plaintiffs allege that each of the Defendants was, directly or indirectly, involved in the sale of the investments to them, or played a material role in the fraudulent Ponzi schemes.  Plaintiffs' Amended Complaint contains numerous allegations of acts and conduct on the part of the CapWest Defendants in support of the claims made against them (Amended Complaint, ¶¶ 3, 4, 12, 46, 52-64, 71-75, 77-79, 93-98, 108-117, 118-122, 133-140, 148-151, 153, 154, 156-164, 166-168, and 175-177).

8.      The CapWest Defendants move to compel arbitration of all claims asserted against them by both the Fieldgroves and the Fieldgrove Trust, and to then dismiss all claims asserted by the same against all of the CapWest Defendants.

9.      Regarding Exhibit A, at the top of the Confidential Account Application is a line item entitled "Account Title/Registration."  In the line immediately following such line item is the following:  "Russell C Fieldgrove + Mary Jane Fieldgrove."  The Confidential Account Application is signed at the bottom by Russell Fieldgrove and Mary Jane Fieldgrove.  Other than the personal information (name, address, phone number) and the signatures of the Fieldgroves at the bottom of the Confidential Account Application, all other writing on the Confidential Account Application is that of someone other than Russell or Mary Jane Fieldgrove (Amended Complaint, ¶ 65).

4

10.     The form of the Confidential Account Application for the Cecil H. Fieldgrove Trust, in Exhibit B is identical to that for Russell and Mary Jane Fieldgrove.  In Exhibit B, only the signature of "Cecil H. Feildgrove, TTEE" is in the hand of Cecil Fieldgrove.

11.     Immediately preceding the signatures of Russell and Mary Jane Fieldgrove and of Cecil Fieldgrove in the Confidential Account Application is a four sentence paragraph which is difficult to read.   Although there is no document called a "Client Agreement" the first sentence purports to have the Fieldgroves acknowledge receiving a copy of a "Client Agreement" and incorporating by reference into the Confidential Account Application this "Client Agreement." The third difficult to read sentence of the paragraph is a sentence in the same size type as the immediately preceding two sentences which references a predispute arbitration agreement "[l]ocated in Section 6 of the Confidential Account Agreement and Disclosure Statement." Although the CapWest Defendants highlight and prominently display in their Memorandum this third sentence referencing the predispute arbitration clause, it is anything but prominently displayed or "highlighted" on the Confidential Account Application.

12.     The Account Agreement and Disclosure Statement in Exhibits A and B to the Declaration of David Leon Smith consists of one page of eight paragraphs, all in extremely fine print.  Buried within this one page of fine print is paragraph 6 entitled "Arbitration Agreement." As with virtually all of the preprinted portions of the Client Account Agreement, Section 6 containing the predispute arbitration clause is in small print and difficult to read.

13.     At the time of the events alleged in the Complaint, and currently, CapWest was a member of FINRA.  FINRA is a regulatory body created in July 2007 by a merger of the National Association of Securities Dealers ("NASD") and the Regulatory Body of the New York Stock Exchange.  The consolidation was approved by the Securities and Exchange Commission

on July 26, 2007 and became effective July 30, 2007 (SEC Release No. 34-51645).  Unless a

separate reference to the NASD is required, throughout these Findings of Fact, Conclusions of

Law, and Order, FINRA will mean FINRA and its predecessor, the NASD.

14.     At all times relevant to the events alleged in the Amended Complaint, Pope was a

registered representative of CapWest, and licensed by FINRA.

15.     Immediately preceding the signatures of Russell and Mary Jane Fieldgrove and

the signature of Ceceil H. Fieldgrove, TTEE, on the Confidential Account Application forms, is

a paragraph containing four sentences.  The third sentence states:

> THE UNDERSIGNED FURTHER ACKNOWLEDGES THAT THEY HAVE
> READ AND UNDERSTAND THE PREDISPUTE ARBITRATION
> AGREEMENT LOCATED IN SECTION 6 OF THE CONFIDENTIAL
> ACCOUNT AGREEMENT AND DISCLOSURE STATEMENT AND HAS
> AGREED TO RESOLVE ANY DISPUTES ARISING OUT OF THEIR
> ACCOUNT BY ARBITRATION.

There then follows a fourth sentence.  This third sentence of the four sentence paragraph

immediately preceding the signatures is not highlighted or distinguishable from the other three

sentences contained in the paragraph.

19.     The Account Agreement and Disclosure Statements arbitration provisions are

entitled "Arbitration Agreement" and are found at Paragraph 5 in Exhibit A and at Paragraph 6 in

Exhibit B.  The Account Agreement and Disclosure Statements consists of one page of eight

numbered paragraphs, each of which is in the same size print and none of which is highlighted to

be distinguishable from any other paragraph of the Account Agreement and Disclosure

Statements.  The print size of the Account Agreement and Disclosure Statement is a fine print

which is best characterized as not easily read.

A.      The Plaintiffs assert that Paragraph 6 of the Account Agreement and Disclosure Statement is invalid and unenforceable by reason of its failure to comply with NASD Rule 3110(f); and

B.      that in the event this Court determines that the predispute arbitration clauses are applicable to one or more of the Plaintiffs, that under the law of the Tenth Circuit and pursuant to 9 U.S.C. § 3, those claims submitted to arbitration should not be dismissed, but stayed pending arbitration.

## CONCLUSIONS OF LAW

### The Court Decides the Arbitrability Issue

20.      The Plaintiffs and the CapWest Defendants agree that in this particular instance, because the Plaintiffs are challenging only the predispute arbitration agreement, and not the entire Agreement itself, the determination of whether there exists a valid agreement to arbitrate is to be made by the Court, not the arbitrators.  *Spahr v. Secco*, 330 F.3d 1226, 1270-72 (10th Cir. 2003).  The question of whether parties to a predispute arbitration agreement have submitted a particular dispute to arbitration is for judicial determination unless the parties clearly and unmistakably provide otherwise.  *Howsan v. Dean Witter Rentals, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 591, 154 L .Ed. 2nd 491 (2002).  The question of who has the primary power to decide arbitrability turns on what the parties agreed to about that matter.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S 938, 943, 115 S. Ct. 1920, 1923, 131 L. Ed.2d 985 (1995).  It should not be assumed that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence they did so agree.  *Id.*, 514 U.S. 944, 115 S. Ct. at 1924.  The existence of a broad provision to arbitrate all disputes arising out of or relating to a contract does not in and of itself provide the requisite clear and unmistakable evidence of the parties' intent to submit the question

of whether a valid agreement to arbitrate exists to an arbitrator.  *Riley Manufacturing Co. v. Anchor Glass Container Corp.* 157 F.3d 775, 780 (10th Cir. 1998).

21.     The Plaintiffs are only challenging the validity of the predispute arbitration clause.  The Court has reviewed in detail the predispute arbitration clause, as well as the entire Client Account Agreement, and concludes that it does not clearly and unmistakably evidence an agreement between either the Plaintiffs and any CapWest Defendant to submit the question of whether an agreement to arbitrate is enforceable to an arbitrator.  Accordingly, lacking such clear and unmistakable evidence within the four corners of the Client Account Agreement, it is for this Court to determine whether the predispute arbitration clause contained in the Client Account Agreement is enforceable.

## The Enforceability of the Predispute Arbitration Clause

22.     CapWest is a broker-dealer licensed by and a member of FINRA.  The NASD, FINRA's predecessor, was a nonprofit corporation established pursuant to the 1938 Maloney Act Amendment to the Securities Exchange Act of 1934 and registered with the Securities and Exchange Commission as a National Securities Association.  *See* Maloney Act, 52 Stat. 1070 (1938), 15 U.S.C. § 78o-3 *et seq.*, amending the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*.  FINRA is required to promulgate rules to protect investors and the public interest. *See* 15 U.S.C. § 78o-3(b)(6) which provides in relevant part:

> The rules of the association are designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade . . . and, in general, to protect investors and the public interests;

23.     The Securities and Exchange Commission approves FINRA proposed rules.  (A complete changeover of the NASD rules to FINRA rules has yet to occur.  Accordingly, certain rules are still known as or referred to as NASD rules.)  Article XI of the FINRA bylaws, which is

substantially similar to Article XI of the previously applicable NASD bylaws sets forth in

relevant part the following purpose of rules promulgated by FINRA:

> To promote and enforce just and equitable principles of trade and business, to maintain high standards of commercial honor and integrity among the members of the corporation, to prevent fraudulent and manipulative acts and practices, . . . to protect public investors and the public, . . ..

Pursuant to Article VII, Section 1 of the FINRA bylaws, among the rules which FINRA

is authorized to prescribe are rules for the voluntary arbitration of controversies between

members and customers.

24.     NASD Rule 3110(f) addresses the requirement of a FINRA member when

using predispute arbitration agreements with customers.  This rule provides in relevant

part the following:

> (1)     Any predispute arbitration clause <u>shall be highlighted</u> and <u>shall be immediately preceded by the following language in outline form</u>.

> This agreement contains a predispute arbitration clause.  By signing an arbitration agreement the parties agree as follows:

> (A) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which the claim is filed.

> (B) Arbitration awards are generally final and binding; the parties ability to have a court reverse or modify an arbitration award is very limited.

> (C) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

> (D) The arbitrators do not have to explain the reason(s) for their award.

> (E) The panel of arbitrators would typically include a minority of arbitrators who were or are affiliated with the securities industry.

> (F) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration.  In some cases, a claim that is ineligible for arbitration may be brought in court.

(G) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

(2)    (A) In any agreement containing a predispute arbitration agreement there shall be a highlighted statement immediately preceding any signature line or other place for indicating agreement that states that the agreement contains a predispute arbitration clause.  The statement shall also indicate at what page and paragraph the arbitration clause is located.

(B) Within 30 days of signing, a copy of the agreement containing such clause shall be given to the customer who shall acknowledge receipt thereof on the agreement or on a separate document. (emphasis added)

NASD Rule 3110(f) became effective May 1, 2005.  SEC Release No. 34-50714 (November 22, 2004); however, the form and content of the NASD Rule 3110(f) predispute arbitration agreement disclosures were initially approved by the Securities and Exchange Commission on May 10, 1989 in SEC Release No. 34-26805, 54 Fed. Reg. 21144-03.

25.    SEC Release No. 34-26805 developed rules relating to arbitration and arbitrability for the self regulatory organizations of the securities industry pursuant to 15 U.S.C. § 78o-3(b)(1).  One of the most significant changes in the rules was the level of disclosure and emphasis on disclosure of predispute arbitration clauses in agreements between members and customers.  In approving the rule changes which are now known as NASD Rule 3110(f), the Securities and Exchange Commission stated the following:

The proposals would require broker-dealers that employ predispute arbitration clauses to place immediately before the clause introductory language that would inform customers that they are waiving their right to seek remedies in court, that arbitration is final, that discovery is generally more limited than in court proceedings, that the award is not required to contain factual findings and legal reasoning, and that the arbitration panel typically will include a minority of arbitrators associated with the securities industry.

The proposal requires that the disclosure language be highlighted four ways. First, large or otherwise distinguishable type must be used.  Second, the disclosure language must be set out in outline form so as to be noticeable to readers.  Third, a statement, also highlighted, that provides that the agreement contains a predispute arbitration clause, and where that clause is located in the

contract, must be inserted into the agreement immediately preceding the signature line.  Fourth, a copy of the agreement containing a predispute arbitration clause must be given to the customer, who is to acknowledge receipt of the agreement, either in the agreement itself or in a separate document.  [footnote omitted]

***

The Commission welcomes the changes in SRO arbitration heralded by these proposals and the cooperative efforts that produced them.  These rules represent several years of efforts by SICA [Securities Industry Conference on Arbitration].  They represent the promise of the SRO's to maintain fair and efficient forums for the arbitration of disputes between members and investors.  The Commission believes that the proposed rules appropriately balance the need to strengthen investor confidence in the arbitration systems of the SRO's both by improving the procedures for administering the arbitrations, and by creating clear obligations regarding the use by SRO members of predispute arbitration clauses, with the need to maintain arbitration as a form of dispute resolution that provides for equitable and efficient administration of justice.  (emphasis and brackets added)

SEC Exchange Release No. 34-26805, 54 Fed. Reg. at 21153 and 21155.  Both the Securities and Exchange Commission's comments approving the predispute arbitration agreement disclosure rules and NASD Rule 3110(f) clearly evidence an intent to benefit and protect the investor/customer.

26.   The Plaintiffs assert that CapWest failed to follow the requirements of NASD Rule 3110(f) in its predispute arbitration clause by:

   a.   Failing to highlight the predispute arbitration clause;

   b.   Failing to provide the disclosures in outline form immediately preceding the predispute arbitration clause contained in NASD Rule 3110(f)(1)(A) through (G);

   c.   That the Client Account Agreement does not contain a highlighted statement immediately preceding the signatures of the Plainttiffs which states where within the agreement the predispute arbitration clause may be found; and

d.  That the Client Account Agreement fails to adequately contain an acknowledgment of receipt of the agreement by the Plaintiffs.

29.     The Plaintiffs are not seeking affirmative relief for a violation by CapWest of NASD Rule 3110(f), which they lack standing to do, but instead, are invoking NASD Rule 3110(f) as a defense to CapWest's request for arbitration, which is proper.  *Nielsen v. Greenwood*, 873 F. Supp. 138, 144 (N.D. Ill. 1995).

30.     Arbitration is a matter of contract.  *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986).  Under principles of third party beneficiary status, courts have considered whether a customer can enforce a FINRA member's obligation under FINRA rules.  In *Scobee Combs Funeral Home, Inc. v. E.F. Hutton & Company, Inc.*, 711 F. Supp. 605 (S.D. Fla. 1989), the Court considered whether a customer of a FINRA broker-dealer could compel the FINRA member to arbitrate the customer's claims pursuant to what was then Section 12(A) of the NASD Code of Arbitration.  There was no arbitration agreement between the customer and the FINRA member.  The Court's answer turned upon whether the customer could be considered an intended third party beneficiary of the FINRA provision requiring members to arbitrate upon the demand of their customers.  In making its determination, the Court in *Scobee* relied upon the *Restatement Second of Contracts* which defines the rights of third party beneficiaries as follows:

> A beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either: (a) the performance of a promisee will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Restatement Second of Contracts*, Section 302.

31.     FINRA is a self-regulatory organization within the meaning of the Securities

Exchange Act of 1934.  *Drexel Burnham Lambert, Inc. v. Pyles*, 701 F. Supp. 217, 220 (N.D. Ga.

1988).  FINRA has promulgated rules governing the conduct of its members.  These rules are

binding upon FINRA members.  *Axelrod & Company v. Kordich, Victor & Neufeld*, 451 F.2d

838, 840 (2nd Cir. 1971).  Among the objectives and purposes of the FINRA and NASD rules is

the protection of investors, such as the Plaintiffs in this case.  *15 U.S.C. § 78o-3, Article XI,*

*Section 1 of the FINRA bylaws*, *Investors Capital Corporation v. Brown*, 125 F. Supp. 2d 1346,

1356-57 (M.D. Fla. 2000).  Under such circumstances, the Plaintiffs in this case are the intended

third party beneficiaries of NASD Rule 3110(f) which specifies the required form and content of

predispute arbitration clauses in customer agreements and between FINRA members and

customers.  *Id*., *Kidder Peabody & Company, Inc. v. Zinsmeyer Trust Partnership*, 41 F.3d 861,

863-64 (2nd Cir. 1994), *Patten Securities Corp., Inc. v. Diamond Greyhound & Genetics, Inc.*,

819 F.2d 400, 406 (3rd Cir. 1987).

32.     The predispute arbitration clause in the present case expressly incorporates into it

the rules of the NASD.  The Court thus concludes that the rules of FINRA are the controlling law

and that customers, such as the Plaintiffs, are intended third party beneficiaries of NASD Rule

3110(f).  As such, the Plaintiffs may properly invoke NASD Rule 3110(f) as a defense to the

CapWest Defendants' Motion to Compel Arbitration.

33.     CapWest has failed to comply with NASD Rule 3110(f) in material respects.  In

the first instance, the predispute arbitration clause is not highlighted as required but is instead

buried in the middle of one full page of fine print contractual provisions.  Secondly, the

important disclosures regarding the effects upon a customer in entering into a predispute

arbitration agreement are not set forth in outline form immediately preceding the language "This

13

agreement contains a predispute arbitration clause.  By signing an arbitration agreement the parties agree as follows:"  As particularly noted by the Securities and Exchange Commission, in SEC Exchange Release No. 34-26805, 54 Fed. Reg. at 21153 and 21155, these disclosures create clear obligations regarding the use by FINRA members of predispute arbitration clauses and are appropriate to strengthen investor confidence in the arbitration system.  FINRA rules result from deliberate and purposeful actions of the Securities and Exchange Commission which require proper recognition from the Courts.  *Mueske v. Piper, Jaffray & Hopwood, Inc.* 859 P.2d 444, 447 (Mont. 1993).  The material noncompliance of CapWest was the provisions of NASD Rule 3110(f)(1) are not a minor triviality but a material departure from such rules' requirements and more than sufficient for this Court to hold the predispute arbitration clause invalid and unenforceable.

34.     NASD Rule 3110(f)(2)(A) provides that immediately preceding the customer's signature, there shall be a highlighted statement indicating the place in the agreement where the predispute arbitration clause may be found.  In the four sentence paragraph immediately preceding the signatures of Russell and MAry Jane Fieldgrove  (Ex. A to the Declaration of David Smith) and the signature of Cecil H. Fieldgrove, TTEE (Ex. B to the Declaration of David Smith), the third sentence does contain a statement of where the predispute arbitration clause may be found in the Account Agreement and Disclosure Statement.  However, this sentence is not highlighted but, instead, is in the same size type as the other three sentences of the paragraph. Furthermore, the sentence is somewhat buried as it is the third sentence in a four sentence paragraph, the paragraph itself which is somewhat difficult to read.

35.     Finally, NASD Rule 3110(f)(2)(B) provides that a copy of the agreement containing the predispute arbitration clause shall be given to the customer who shall

acknowledge receipt on the agreement or a separate document.  The CapWest Defendants do not claim there exists any other documents executed by Plaintiffs relative to the predispute arbitration agreement other than the Client Account Agreement.  The first sentence of the paragraph immediately preceding the signatures of the Plaintiffs contains an acknowledgment that the undersigned  " . . . read and understands and agrees to abide by all the terms and conditions set forth in this Client Agreement . . . ."  Neither the Confidential Account Application or the Account Agreement and Disclosure Statement is entitled "Client Agreement" nor does the Court find such language within either of the Confidential Account Application or the Account Agreement and Disclosure Statement, other than this particular sentence.  It is at best ambiguous as to whether such language would satisfy NASD Rule 3110(f)(2)(B).  CapWest is the drafter of the agreement and in accordance with applicable contract law, ambiguity should be strictly construed against the drafter, in this case, CapWest.  *Emulsified Asphalt, Inc. of Wyoming v. Transportation Commission of Wyoming*, 970 P.2d 858, 864 (Wy. 1998).  Applying this rule, the Court finds that CapWest has failed to comply with NASD Rule 3110(f)(2)(B).

36.     Applying both the controlling law in this case, the public policy considerations expressed by the Securities and Exchange Commission, and applicable case law, the Court finds the predispute arbitration clause contained in the Client Account Agreement invalid and unenforceable.  *Mueske v. Piper, Jaffray & Hopwood, Inc.*, 859 P.2d at 450.  (The Montana Supreme Court, applying public policy considerations and controlling law which it determined to be the NASD rules, held invalid and unenforceable a predispute arbitration agreement for the broker-dealer's failure to comply with NASD Rule 3110(f) by the failure to obtain the signed receipt acknowledging receipt by the customer of the predispute arbitration agreement.)

## **Stay vs. Dismissal**

37.     The Court has determined the predispute arbitration clause to be invalid and unenforceable and will not compel arbitration.  Although the Court does not need to address whether it has authority to dismiss the claims when arbitration is compelled, in the Tenth Circuit, such dismissal is not authorized.  9 U.S.C. § 3 authorizes a District Court to stay litigation proceedings in the event it compels arbitration pursuant to a predispute arbitration clause.  The Fourth, Fifth, Sixth, and Ninth Circuits have concluded that where a court compels all claims between the parties to arbitration, dismissal is warranted.  On the other hand, the Seventh and Tenth Circuits have held that 9 U.S.C. § 3 only authorizes the staying of litigation pending arbitration and dismissal is not warranted.  This Court is required to follow Tenth Circuit law.  Therefore, were this Court to compel arbitration, dismissal would not be warranted and the Court would only authorize a stay of litigation pending arbitration.  *Adair Bus Sales, Inc. v. Bluebird Corporation*, 25 F.3d 953, 955 (10th Cir. 1994) (under 9 U.S.C. § 3, a stay pending arbitration is all that is authorized and dismissal is inappropriate).  *Strom v. First American Professional Real Estate Services, Inc.*, 2009 W. L. 2244211 at *5 (W.D. Okla. 2009) (despite that some circuits have held that dismissal is appropriate when all claims are referred to arbitration, under *Adair Bus Sales, Inc.*, and in light of the plain language of 9 U.S.C. § 3, the proper remedy is a stay rather than dismissal).  *Axis Venture Group, LLC v. 1111 Tower, LLC*, 2010 W. L. 1278306 at *2 (D. Colo. 2010) (the mere existence of an arbitration agreement does not divest a Federal Court of subject matter jurisdiction, citing *Adair Bus Sales,* that upon a motion to stay pending arbitration, the proper course is to stay the action pending arbitration rather than dismissal).

## **ORDERS**

NOW THEREFORE, it is ordered that the Motion to Compel Arbitration of CapWest

Securities, Inc., Capstone Financial Group, Inc., Colorado Capital Holdings, LLC, Personal

Money Management, LLC, David Leon Smith, Dale Keith Hall, and Randall Pope is denied.

DATED this _____ day of _____, 2010.


_____
William F. Downes
Chief U.S. District Court Judge